**NEW LIBERTY MEDICAL AND HOSPI-
TAL CORPORATION, a Missouri general
not-for-profit corporation, (Plaintiff) Re-
spondent,**

v.

**E. F. HUTTON AND COMPANY, Inc., a cor-
poration, and New Liberty Hospital Dis-
trict, (Defendants) Appellants.**

No. 57002.

Supreme Court of Missouri,
En Banc.

Dec. 13, 1971.

**2**

· Bruce G. Heavner, Norman E. Gaar, Alvin D. Wilken, Kansas City, for respondent; Heavner, Jarrett & Kimball and Stinson, Mag, Thomson, McEvers & Fizzell, Kansas City, of counsel.

Fred Wilkins, Kansas City, for appellants; Shughart, Thomson & Kilroy, Kansas City, of counsel.

FINCH, Chief Justice.

The decisive issue presented is whether a public hospital district incurred indebtedness in violation of Article VI, § 26(b) of the Constitution V.A.M.S.[1] by entering into a long-term lease for rental of a hospital building when said lease unconditionally obligates the hospital district for the entire term of the lease, regardless of any contingencies, to pay rentals which cover principal and interest of debentures covering the cost of building and equipping the proposed hospital. The question is presented by an appeal from a declaratory judgment wherein the trial court held that the lease agreement did not violate the constitutional provision and that plaintiff (lessor) could issue valid debentures to raise money for constructing the hospital. We have jurisdiction because of the amount involved and because constitutional issues are raised. We reverse and remand with directions to the trial court to enter a declaratory judgment in accordance with the views herein expressed.

The facts on which the case is submitted were stipulated. Defendant hospital district was organized under Chapter 206[2] by order of the Circuit Court of Clay County for the purpose of furnishing hospital and medical services to residents of the district. Thereafter, plaintiff corporation was granted a charter as a not-for-profit corporation under Chapter 355. Plaintiff proposed to build and equip a hospital building and then to lease it to defendant hospital dis-

---

1. All constitutional references are to Constitution of Missouri, 1945, unless otherwise indicated.

2. All statutory references are to RSMo 1969, V.A.M.S.

trict, which would operate the same. In order to finance said building, plaintiff proposed to issue and sell $3,000,000 of first mortgage hospital debentures maturing over a 30-year period and payable solely from rentals to be received for the new facility. Defendant Hutton, by a contract dated November 5, 1970, agreed to buy said bonds if legally issued.

After the execution of the above contract, a lease agreement between plaintiff company and defendant hospital district was authorized and executed. In brief, it provided that plaintiff should acquire a site on which it would construct and equip a hospital and related facilities. These facilities were leased by the agreement to defendant hospital district for a term of 30 years. Rentals were to be paid semi-annually and were to be in such amounts as were required by lessor (plaintiff) to pay the principal and interest on its debentures, plus all costs incident to the retirement of the debentures, including all fees, charges and expenses of the trustee or paying agent, and other items denominated Additional Rent. Rentals were to be paid from operating receipts of the hospital and from tax receipts of the district.

The lease provided that "for the express benefit of the Lessor and the holders of the Debentures," lessee (hospital district) agreed to pay all rentals called for in the agreement "without abatement, deduction, set-off, counterclaim, recoupment or defense or any right of termination or cancellation arising from any circumstance whatsoever, whether now existing or hereafter arising, and irrespective of whether the Project shall have been started or completed, or whether Lessor's title thereto or to any part thereof is defective or non-existent, and notwithstanding any damage to, loss, theft or destruction of the project or any part thereof, any failure of consideration or commercial frustration of purpose, the taking by eminent domain of title to or of the right of temporary use of all or any part of the Project, legal curtailment of Lessee's use thereof, the eviction or constructive eviction of Lessee, any change in the tax or other law of the United States of America, the State of Missouri, or any political subdivision of either thereof, any change in Lessor's legal organization or status, or any default of Lessor hereunder, and regardless of the invalidity of any action of the Lessor, and regardless of the invalidity of any portion of this Lease, and Lessee hereby waives the provisions of any statute or other law now or hereafter in effect contrary to any of its obligations, covenants, or agreements under this Lease or which releases or purports to release Lessee therefrom." Subsequently, the lease states, "it being the intent of this Lease that the Lessee shall be unconditionally and absolutely obligated to perform fully all of its obligations, agreements and covenants under this Lease (including the obligation to pay Basic Rent and Additional Rent) for the benefit of the holders of the Debentures."

The only right of early termination given to defendant hospital district was contingent on prepayment by the hospital district to the trustee of such amount as would be required to redeem all outstanding debentures, plus expenses incident thereto. The lease also contained an option to purchase, but this too, was contingent upon payment in full.

Finally, the agreement provided that if the debentures and all interest thereon and all other sums due under the lease had been paid in full, the property was to be conveyed automatically to defendant hospital district for no consideration.

Lessor (plaintiff) was given an option, in case of default in rental payments by the hospital district, to terminate the lease or, in the alternative, to take possession and relet the premises for the account of lessee (hospital district) without relieving lessee of any liability under the lease.

After issuance of the debentures had been authorized by plaintiff, and after plaintiff and defendant hospital district had authorized execution of the foregoing

lease and a proposed mortgage and indenture of trust to secure the debentures had been authorized, defendant Hutton, by letter to plaintiff, refused to accept delivery of or to pay for the debentures on the basis that for various specified reasons, plaintiff was believed to be unable to issue valid debentures.

Thereafter, this declaratory judgment action was instituted. After the pleadings had been filed, the case, as previously indicated, was submitted on an agreed statement of facts, which, among other things, included a stipulation that the rentals called for were reasonable.

On June 3, 1971, the trial court entered judgment holding that plaintiff had authority, as a lawfully organized not-for-profit corporation, to issue the proposed debentures; that both plaintiff and defendant hospital district had authority to enter into the lease contract; that defendant hospital district could use its funds, including both those received from operation of the hospital and from tax levies, to make the lease rental payments; that Missouri constitutional provisions were not violated by any of the agreements; and that defendant Hutton was obligated under its contract to purchase and pay for the $3,000,000 in debentures. This appeal followed.

■ At the outset, appellants' brief asserts that plaintiff is not a lawfully organized not-for-profit corporation and consequently cannot issue valid debentures. We find no merit in this contention. The parties have stipulated that plaintiff is a Missouri corporation holding a certificate of incorporation granted under the provisions of Chapter 355 by the Secretary of State of Missouri. That certificate incorporates it as a not-for-profit corporation. Appellants have no standing to challenge the legality of plaintiff's legal existence in this proceeding. "The general rule is that on grounds of sovereignty and public policy the legal existence of a corporation cannot be attacked collaterally by private suitors, but only in a direct proceeding instituted by the State." Evangelical Lutheran Synod of Missouri, Ohio and Other States v. Hoehn, 355 Mo. 257, 196 S.W.2d 134, 141.

■ Appellants' next proposition is that the act of plaintiff in leasing all of its property to the defendant hospital district is ultra vires on the theory that it is outside of and beyond the purposes for which plaintiff was organized. Again, we disagree. Plaintiff was organized for civic, charitable, scientific and educational purposes, including the establishment, erection, ownership, leasing, and operation of one or more hospitals. Section 355.090(6) of the statutes specifically authorizes a corporation organized under Chapter 355 "to sell, convey, mortgage, pledge, lease as lessor, and otherwise dispose of all or any part of its property and assets." That statute permits exactly what plaintiff undertook to do in this instance. It contracted to erect and equip a hospital and then to lease it to the defendant hospital district to be operated as a hospital. That accomplished one of the purposes for which the corporation was organized. It did result in a change in management of those services, but that did not make the act of leasing the property ultra vires. It was not an abandonment of the corporate purpose of providing hospital services.

■ Appellants' third point is that the plan incorporated in the lease agreement was one in which defendant hospital district was lending its credit to plaintiff, a private corporation, in violation of Article VI, § 25 of the Constitution. They argue that this whole plan was directed toward financing a hospital facility for the hospital district and that it was said district's credit (its ability to pay) which would support the debentures which plaintiff proposes to issue. This position is predicated on the idea that from the standpoint of purchasers of the debentures, it was the hospital district's ability to pay rentals which stood behind the debentures.

The case of City of La Habra v. Pellerin, 216 Cal.App.2d 99, 30 Cal.Rptr. 752, is

pertinent. In that case La Habra Civic Center Authority, a non-profit corporation, was created for the purpose of building a police and fire station. It issued $798,000 in bonds for that purpose and it executed a 20-year lease of the facilities to the city. The bonds were to be retired with rentals obtained from the city. At the termination of the lease, title to the property was to pass to the city. A mandamus proceeding was commenced to compel the mayor of the city to sign the lease agreement. The contention was made that the proposed financing plan violated Article IV, Sec. 31 of the California Constitution, the pertinent parts of which " * * * in substance provide[d] that the Legislature has no power to authorize the giving or lending of the credit of a city in aid of or to any corporation * * * or to pledge the credit thereof for the payment of liabilities of any corporation." In holding that the plan did not violate this constitutional restriction, the appellate court said, 30 Cal. Rptr. l.c. 754: "Respondent's position is not meritorious. The City is not lending its credit to the Authority. If the credit standing of the Authority is enhanced by reason of its contract with the City, this is a mere incident of a business relationship from which it cannot be concluded that the City is lending its credit. To illustrate the situation more vividly a private corporation may contract with the Government and use that contract to secure favorable loan arrangements from its bank. It cannot be said, however, that the Government has loaned its credit even though the financial stability of the Government is helpful to the corporation in obtaining the loan."

A similar question was involved in the case of State ex rel. Thomson v. Giessel, 271 Wis. 15, 72 N.W.2d 577. In that case the Board of Regents of the University of Wisconsin leased certain land to a not-for-profit corporation upon which the latter planned to construct an indoor-practice building. The property was leased to the not-for-profit corporation for a term of 50 years for a monthly rental of $400 per month. On the same day, the not-for-profit corporation, in turn, subleased to the University the identical land plus improvements thereon for a 50-year term at a rental which consisted of $400 per month plus additional rentals calculated to enable the not-for-profit corporation to retire the indebtedness to be created in the construction of the building. Assignment of rentals directly to banks for the purpose of having them applied on the indebtedness was authorized. In the litigation which followed it was contended that the arrangement violated Article VIII, Section 3 of the Wisconsin Constitution which provided that: "The credit of the state shall never be given, or loaned, in aid of any individual, association, or corporation. * * *" In rejecting that contention, the court said, 72 N.W.2d l.c. 584:

"Manifestly, the only purpose of this provision is to prohibit the state from acting as a surety or guarantor of the collateral obligation of another party. It is the promise by the state as a guarantor to answer for the debt of another that is proscribed by the state constitution. * * *

" * * * [the director] concedes that under arrangements as here, state indebtedness would not exist without the assignment and pledging of leases. He maintains, however, that the assignment of the state's rental obligation converts the obligation into indebtedness. Under the contracts in question, the results of the assignment and pledging are not to require the state to pay the obligations of the building corporations, but merely to require it to pay its rental obligations to the lenders rather than to the building corporations. * * * There is here no promise of a guarantor to answer for the payment of a debt of another. A lessor has a traditional right to assign rents. Legally, the state is in no different position by agreeing to pay rent and actually paying it to the assignee or pledgees than it would be in having agreed to pay and in paying the rent to the lessor."

It, of course, is true that the hospital district did agree to pay rentals over a 30-year period, which would be sufficient to retire the debentures, and that it agreed to an assignment of the rentals for the purpose of meeting payments on the debentures. It does not follow, however, that the hospital district was lending its credit in violation of Article VI, § 25. As pointed out in the City of La Habra case, any time a solvent lessee enters into a long-term lease, the existence of that instrument enhances the credit standing of the lessor. That frequently makes it possible for lessor to borrow money which otherwise would not be available. In this instance, it did enable plaintiff lessor to borrow money by selling debentures. Nevertheless, the hospital district, as lessee, was not the guarantor or endorser of lessee's credit. Lessee simply contracted for the rental of hospital facilities and agreed to pay therefor. We hold that the arrangement did not violate Article VI, § 25.

The difficult question presented by this case is whether the lease agreement creates indebtedness in violation of Article VI, § 26(b) of the Constitution. We have concluded that it does for reasons which we shall state.

The lease obligates the hospital district, unconditionally, to pay the rentals called for in the lease agreement. These rentals are not regular installments of fixed amounts, but instead each payment is to be sufficient to enable payment of principal installments then due on the debentures plus all interest thereon and all costs incident to payment and retirement of the debentures, plus extra rent which shall be sufficient to cover taxes and assessments, general and special, all water and sewer charges, plus certain other obligations specified in the lease. Such rental payments continue for the full 30-year term. As a previously quoted portion of the lease stated, the obligation to make these rental payments is "without abatement, deduction, set-off, counterclaim, recoupment or defense or any right of termination or cancellation arising from any circumstance whatsoever." The lease recites, additionally, that the unconditional obligation to pay is made for the benefit of holders of the debentures. This is more than the usual obligation of lessee to pay rent for premises furnished. It is an unconditional undertaking to pay a sum total which will equal the principal and interest on the debentures plus taxes, costs and certain other items over a 30-year period, even if for some reason the premises become unavailable for use of lessee. This is assuming indebtedness which must be paid in all events.

A somewhat similar situation was presented to the Supreme Court of Michigan in People v. Doyle and Associates, Inc., 374 Mich. 222, 132 N.W.2d 99. There the agreement between Doyle and the county called for the latter to lease land to Doyle on which it would build and equip a building for the housing and care of elderly people. The premises, plus the completed facility, were leased back to the county for ten years, for which the county was to pay Doyle rentals which would cover all costs and at the end of the ten-year period title to the building was to be in the county. In holding that the agreement violated a constitutional prohibition against indebtedness without voter approval, the court said, 132 N.W.2d l.c. 102:

" * * * The record made demonstrates conclusively that the agreement was nothing less than an agreement by the county to purchase a fully equipped building which Doyle undertook to build upon the county's land, payment for which was to be made by the county over a 10-year period. The ground lease and lease-back agreement were devices of convenience to secure Doyle and to permit it to arrange financing for the project. It is not an unfamiliar practice in private commercial affairs nor is it unknown in government-purpose financing. See Magnusson, 'Lease-Financing by Municipal Corporations as a Way Around Debt Limitations', 25 Geo.Wash.L. Rev. 377 (1957).

"That the county undertook to incur an indebtedness cannot be questioned seriously. It agreed to make monthly payments and to pay other charges and expenses for a 10-year period certain during which time it forswore termination of the agreement. It pledged it would budget sufficient funds each year for the monthly payments required to be made and, indeed, it pledged to levy sufficient taxes and to collect sufficient revenues from other sources to make such payments. In short, it assumed an indebtedness to Doyle repayable in installments over a 10-year term."

The Michigan court emphasized the fact that the lessee county unconditionally agreed to pay—"it forswore termination of the agreement." That is what the hospital district did in the situation we now review.[3]

There are cases which have upheld long-term lease arrangements as not resulting in the creation of indebtedness in violation of constitutional provisions. Plaintiff-respondent has cited some of those cases. One is Book v. State Office Building Commission, 238 Ind. 120, 149 N.E.2d 273. There a State Office Building Commission was given authority to and did issue bonds payable from rentals to be received for a state office building which the Commission was to build and then rent to the state government. Eventually, upon retirement of the bonds, the building would belong to the state. The court, relying on earlier Indiana decisions, held that the agreement of the state to pay rentals did not create indebtedness which would violate constitutional restrictions. However, that case is distinguishable on the facts from our situation, because the Indiana statute fixed an indefinite term and gave the right of cancellation of the lease at any time so that rentals provided for in the agreement could not be considered as sufficient to cover the entire purchase price of the building.

Another case cited and relied on heavily by respondent is State v. Giessel, supra. It held that rentals to be paid under a long-term lease for an indoor-practice building for the University of Wisconsin (and other buildings for the state) did not create indebtedness on the part of the state, even though the state would own the buildings upon retirement of the indebtedness for construction. However, factually, that case is distinguishable from the unconditional long-term obligation in our case. This is shown by the court's language when it said, 72 N.W.2d l.c. 586:

"It is to be noted also that the state is not under a legally enforceable obligation to pay rent in any of the causes of action. Under provision of ch. 144, Laws of 1955 particularly secs. 14.89(1) (c), 36.06(6) (b), (3), Stats., it is expressly provided that the obligation of the state to pay rent to a building corporation shall be subject to available appropriations. Since the availability of appropriations is within the sole control of the state, this condition renders the state's rental obligation entirely optional and within its discretion. No legally enforceable obligation results."

Some of the other cases relied on by respondent hold that future rental payments assumed under long-term leases do not constitute indebtedness on the basis that at common law such future rentals were not recognized as present debts or liabilities. Such cases include Clayton v. Kervick, 52 N.J. 138, 244 A.2d 281, and Hall v. Mayor and City Council of Baltimore, 252 Md. 416, 250 A.2d 233. These cases do not sustain respondent's position here because, as previously pointed out, this case does not present a situation wherein a governmental agency has agreed merely to pay future rentals as they accrue under a long-term

3. Appellants cite numerous other cases, but we do not deem it necessary to review or rely on those other cases. We consider that the facts in the case we now consider clearly establish that indebtedness is created and we limit our holding to the facts presented.

lease. Rather, we are considering the effect of the absolute and unconditional undertaking which the hospital district assumed.[4] Such absolute agreement to pay created indebtedness on the part of the hospital district which, under Article VI, § 26(b), it could not assume unless authorized by the required vote of the people. Therefore, the proposed debentures are not valid and Hutton cannot be required to purchase them.

The judgment is reversed and the cause remanded with directions to enter a declaratory judgment in accordance with the views expressed in this opinion.

All concur.

4. Respondent cites Saleno v. City of Neosho, 127 Mo. 627, 30 S.W. 190, and Lamar Water & Electric Light Co. v. City of Lamar, 128 Mo. 188, 26 S.W. 1025, 31 S.W. 756, but these cases are not analogous. Saleno dealt with an agreement to pay hydrant rentals, dependent on water being supplied by the company, and Lamar related to the nature of an agreement to pay for supplies as furnished each year over a 20-year period. These were not unconditional obligations comparable to those assumed by the hospital district in this case.

Respondent also calls our attention to Board of Public Buildings v. Crowe, Mo., 363 S.W.2d 598, which considered Art. III, § 37 of the Constitution (rather than Art. VI, § 26(b)), but the case is not analogous or controlling. This seems clear from the following passage from the opinion, 363 S.W.2d l. c. 605:

"We do not consider this as a contract of purchase by the state as some courts, under different facts, have held. No periodic or aggregate payments are fixed; indeed, the Board is not required to enter into leases at all, much less leases for the full term of the bonds. The maturity of such bonds is left elastic in the act (not more than forty years) and provisions are made for refunding. Nor does it appear that the state will directly acquire title."