**ST. CHARLES CITY–COUNTY LIBRARY DISTRICT, Plaintiff-Respondent,**

v.

**ST. CHARLES LIBRARY BUILDING CORPORATION, et al., Defendants-Appellants.**

No. 42292.

Missouri Court of Appeals, Eastern District, Division One.

Dec. 22, 1981.

William J. Hannah, Pros. Atty., John C. Hannegan, St. Charles, for defendants-appellants.

Dale L. Rollings, St. Charles, for plaintiff-respondent.

STEPHAN, Presiding Judge.

Respondent St. Charles City-County Library District (District) sought a declaratory judgment in the court below to determine whether a lease between the Library District and the St. Charles Library Building Corporation (Corporation) violated the Missouri Constitution. The Corporation and St. Charles County (County) were defendants in the action. The circuit court held that the proposed lease was not in violation of Article VI, Section 26 of the state constitution. The County appeals. We affirm.

The facts of the case, to which the parties stipulated at trial, are as follows. At the time of trial, the District operated eight free public libraries in the County. Three were located in buildings owned by the District, and five were in buildings leased by the District, pursuant to § 182.070, RSMo 1978. The District's main source of revenue is a tax on real and personal property of the County, provided for by §§ 182.010 and 182.020, RSMo 1978.

In 1976, the District, anticipating the loss of one library branch to highway expansion, acquired a tract of land with the intention of building a library thereon. The District paid for the land in cash and owns it free and clear of all encumbrances.

Chapter 182, RSMo 1978 provides two means whereby a library district may finance the building of a new library facility. Section 182.100 provides for a tax increase, upon approval of a majority of the voters, the proceeds of which are to go solely toward building and furnishing a library. Section 182.105 authorizes the issuance of bonds, with the approval of two-thirds of the voters, to generate revenue sufficient to pay for a new building. A tax increase would be necessary to pay the interest and principal of the indebtedness incurred through the bond issue.

Once in 1976, and again in 1977, County voters defeated propositions calling for an additional tax levy for the purpose of erecting a new library building on the tract acquired in 1976.

In an effort to finance the new building without a tax increase and at interest rates comparable to or lower than existing municipal bond rates, the District devised the financing plan that is the subject of this litigation.

A not-for-profit corporation, the St. Charles Library Building Corporation, was created under Chapter 355, RSMo 1969, its sole stated purpose being to aid the District in the erection of free public library buildings. The Corporation received an exemption from federal income tax and a determination that interest paid on its obligations would be excludible from the gross income of the recipients thereof.

Armed with these favorable I.R.S. determinations, the Corporation arranged a $600,000 construction loan at 5.95% with four local banks, each participating equally. The terms call for a monthly repayment by the Corporation of just over $4,000 for five years. At the end of the fifth year, a "balloon" payment of over $500,000 is due. The banks are not required to renegotiate the loan when the balloon payment falls due; however, the parties stipulated at trial that the loan "will be renegotiated" at the end of five years.

There were agreements negotiated between the Corporation and the Library Dis-

trict ancillary to the construction loan. The District agreed to convey the tract of land, mentioned previously, to the Corporation in return for a promissory note of $325,000, secured by a deed of trust. The tract is to be used by the Corporation to secure the construction loan by giving the banks a deed of trust.

This financing plan further contemplates a lease agreement between the District and the Corporation whereby the District will pay monthly rent to the Corporation for use of the new library building. The amount of the rent paid by the District to the Corporation amounts to seventy cents more than the regular monthly construction loan payments made by the Corporation to the banks. The Corporation will in fact assign to the banks the rents due it from the District. The lease additionally provides for the District to assume certain responsibilities, such as insurance costs, loan and closing costs, and costs of maintenance. The District also obligates itself to pay rent equal to any interim interest, loan or other charges incurred by the Corporation prior to the District's actual occupation of the building, even during the period of construction.

The lease is for one year, with twenty-four successive options to renew for one year under the same conditions. If all the options are exercised, the District has the further option of buying the building for the sum of one hundred dollars.

Appellant County first contends that the lease-purchase agreement between the District and the Corporation violates Article VI, Section 26(a) of the Missouri Constitution, which forbids a municipal corporation, in this case the Library District, from becoming "indebted in an amount exceeding in any year the income and revenue provided for such year plus any unencumbered balances from previous years, except as otherwise provided in this Constitution." According to the County, the District is using the Corporation to funnel purchase money, disguised as "rents" due the Corporation, to the banks. Therefore, the County argues, the entire construction loan should be regarded as a present debt of the District. To incur such a large debt would clearly require an anticipation of revenues beyond the present year, in violation of Article VI, Section 26(a).

The County's view is that the District used a sham not-for-profit corporation to obtain a construction loan that the District could not lawfully obtain on its own because of the constitutional debt-limitation provisions of Article VI, Section 26(a). The Corporation could not have obtained the loan without using the tract of land as collateral. The tract of land was conveyed by the District to the Corporation, which, in the County's view, gave virtually nothing in return: a promissory note for $325,000 uncollectible for twenty-five years; and a deed of trust, which might never be recorded or which might be recorded secondarily to the deed of trust held by the bank to secure the construction loan. The County urges that these facts evince an intent on the part of the District to continue to renew the lease for twenty-four years and thereby to purchase the building. The District's intention, allegedly, is to borrow and build rather than merely to lease and occupy. Other earmarks of a "purchase," according to the County, are lease provisions under which the lessee District, rather than the lessor Corporation, is exposed to what are normally the risks of building ownership, such as risk of loss resulting from fire or flood. Further, the District will be making "rental" payments to the Corporation, and thus by assignment to the banks, during the anticipated lengthy construction period, receiving nothing of value in return at that time.

Respondent Library District's position is that § 182.070, RSMo 1978, authorizes it to lease space for its use. The present lease does not bind the District for more than one year at a time. The lease therefore creates an indebtedness only for the year following exercise of the option. Thus, under this view, the lease arguably does not violate the constitutional limitation on debt contained in Article VI, Section 26.

Lease-purchase contracts entered into by municipal corporations have engaged the attention of courts throughout this country for many years. *Bulman v. McCrane*, 123 N.J.Super. 213, 302 A.2d 163, 165 (1973), rev'd, 64 N.J. 105, 312 A.2d 857 (1973); Nichols, *Debt Limitations and the Bona Fide Long-term Lease with an Option to Purchase*, 9 Urb. Law. 403, 407–410 (1977) (hereinafter *Debt Limitations*). Subdivisions of state governments have frequently used lease-purchase contracts in an attempt to evade constitutional debt restrictions similar to those imposed in Missouri under Article VI, Section 26. *Bulman*, 302 A.2d at 165; *Debt Limitations*, supra, at 403; Magnusson, *Lease-Financing by Municipal Corporations as a Way around Debt Limitations*, 25 Geo.Wash.L.Rev. 377 (1957) (hereinafter *Lease-Financing*).

Missouri authority on the issue before us is sparse but furnishes guidelines, application of which, we believe, resolves the matter. See *Scroggs v. Kansas City*, 499 S.W.2d 500 (Mo.1973), which involved an arrangement between the City of Kansas City and the Kansas City, Missouri Public Building Authority, a non-profit corporation, for the purpose of financing a convention center. The City leased land to the Authority. This "Ground Lease" was for a term of thirty years, and required payment of the full 4 million dollar rental at the beginning of the lease term. The Authority meanwhile was to issue bonds for 25 million dollars using the proceeds to pay the City the "Ground Lease" rental and to build the convention center facility. Simultaneously with the thirty year ground lease, a "Lease and Agreement" was in effect, whereby the Authority leased to the City the same tract of land with the convention center building and all other improvements thereon. The City was to pay nearly 55 million dollars in rent, in semi-annual installments for thirty years. Under the "Ground Lease," the land and improvements were to be surrendered to the City upon expiration of the lease.

The City passed three new or increased license taxes on certain enterprises, and provided that payment of revenue therefrom would join with revenue gained from operation of the Convention Center in a special fund.[1] The City would use the special fund to pay rent to the Authority for the Convention Center, under the Lease and Agreement, and to pay upkeep on the Center.

The supreme court concluded: "We hold the 'Lease and Agreement' violates Section 26(a), and is void, because it creates a present indebtedness and obligates the City to impose taxes in succeeding years to satisfy this indebtedness." Id. at 505.

■ The *Scroggs* case is, however, distinguishable from the case at bar because the lease in *Scroggs* did not contain the yearly options to renew found in the lease before us. The supreme court noted that the *Scroggs* lease was not executory or contingent and that the City, by entering into the lease, was "assuming indebtedness which must be paid in all events." Id., at 504. The court quoted from the Magnusson article, *Lease-Financing*, supra, to the effect that objectionable lease-financing arrangements involve leases that are in practice

1. The supreme court first addressed the issue of the "special fund doctrine," which holds that an indebtedness of a municipal corporation payable only out of income derived from the property purchased is not a debt under the constitutional debt-limitation provision that concerns us here. If the special fund pledged to the payment of the debt must be replenished by taxation, then the obligation is a debt which may, depending on its size and nature, violate the debt-limitation provisions. *Scroggs*, supra, at 502. The court held that the city license taxes involved rendered the City's obligation a debt subject to the debt-limitation provisions of the constitution. Id., 504-505.

We do not believe, however, that the application of the "special fund doctrine" as discussed in *Scroggs* aids in resolving the case at bar. The supreme court still had to address the issue whether the City's "Lease and Agreement" with the Authority created a present indebtedness obliging the City to impose taxes in succeeding years to satisfy this indebtedness. The court held that through the lease the City incurred a debt for longer than a year and that therefore the lease was void under Article VI, Section 26. Id., 505.

non-terminable. Id., at 505. As noted earlier, the Library District can terminate the present lease without incurring legal liability. The court quoted further from the Magnusson analysis as follows:

"It seems clear that the intent behind debt limitations was to prevent *long-term repayment obligations*; i.e. borrowing for public improvements and to prevent the obligatory annual need for resulting taxation to pay for the liability." *Lease-Financing*, supra, at 391, cited in *Scroggs*, supra, at 505.

Because of its options, the lease here in question does not create "long-term repayment obligations" on the part of the District, nor is there an obligatory annual need for taxation to retire the liability.

In the case at bar, the court below in its memorandum opinion took note of the differences between the facts in *Scroggs* and the facts before the court, and upheld the constitutionality of the District's lease. We agree with this result, believing that the rationale given by the supreme court for its decision in *Scroggs* supports a different result in a case involving a lease terminable at the municipal corporation's option.

In *New Liberty Medical and Hospital Corporation v. E. F. Hutton & Co.*, 474 S.W.2d 1, 2 (Mo. banc 1971), the Missouri Supreme Court addressed the issue of "whether a public hospital district incurred indebtedness in violation of Article VI, Section 26(b) of the Constitution V.A.M.S. by entering into a long-term lease for rental of a hospital building when said lease *unconditionally obligates the hospital district for the entire term of the lease, regardless of any contingencies*, to pay rentals which cover principal and interest of debentures covering the cost of building and equipping the proposed hospital." (Emphasis added.) In holding the arrangement to be constitutionally defective, the court discussed a number of cases from other jurisdictions which involved constitutional and statutory debt restrictions similar to these involved here. All of these cases were distinguished on the grounds that they did not involve circumstances in which the lessee was unconditionally bound throughout the term of the lease. One such case, *State ex rel. Thomson v. Giessel*, 271 Wis. 15, 72 N.W.2d 577 (1955) was distinguished specifically on the grounds that, under the statutory format which governed the lease, the state's obligation continued only at the option of the state. Our supreme court in *New Liberty* quoted from *State ex rel. Thomson* as follows:

"It is to be noted also that the state is not under a legally enforceable obligation to pay rent in any of the causes of action. Under provision of Ch. 144, Laws of 1955 particularly secs. 14.89(1)(c), 36.06(6)(b), (3), Stats., it is expressly provided that the obligation of the state to pay rent to a building corporation shall be subject to available appropriations. Since the availability of appropriations is within the sole control of the state, *this condition renders the state's rental obligation entirely optional and within its discretion*. No legally enforceable obligation results." (Emphasis added.) 72 N.W.2d at 586, quoted in 474 S.W.2d at 7.

The decision in *New Liberty* rested on "the absolute and unconditional undertaking which the hospital district assumed." Id. 7–8. (Emphasis added.) The court distinguished that absolute undertaking from an agreement "merely to pay future long-term rentals as they accrue under a long-term lease." Id. The agreement that we are considering is, *a fortiori*, clearly not an "absolute and unconditional undertaking," because of the yearly option to renew.

Accordingly, because the lease may be terminated by the failure of the District to renew it at the end of any year, we hold that it does not violate the debt-limitation provisions of Article VI, Section 26 of the constitution.

The County argued below that, in addition to violating the debt limitation provisions, this lease-purchase arrangement constitutes a lending of credit or a granting of property by a political subdivision to a private entity, in violation of Article VI, Sections 23 and 25 of the Missouri Constitution. *The trial court did not explicitly rule on this*

issue, but since the court upheld the plan we must assume that it found no violation of these sections. Appellant County assigns this implicit ruling as error. We hold for respondent Library District on this issue.

The purpose of the constitutional prohibition against the lending of credit is to prohibit the state or a political subdivision from acting as a surety or guarantor of the debt of another. *State ex rel. Jardon v. Industrial Development Authority of Jasper County*, 570 S.W.2d 666, 676 (Mo. banc 1978); *State ex rel. Mitchell v. City of Sikeston*, 555 S.W.2d 281, 290–291 (Mo. banc 1977); *New Liberty Medical*, supra, at 5.

As indicated above, *New Liberty Medical* held that the "absolute and unconditional" nature of the hospital district's obligation to pay rentals for a period of thirty years, without voter approval, violated Article VI, Section 26 of the constitution. That case also held, however, that the financing arrangement between the district and the not-for-profit corporation, which was very similar to the arrangement here, did not violate the Article VI, Section 25 prohibition against the lending of credit by political subdivisions of the state. In the words of the court:

"It, of course, is true that the hospital district did agree to pay rentals over a 30–year period, which would be sufficient to retire the debentures, and thät it agreed to an assignment of the rentals for the purpose of meeting payments on the debentures. It does not follow, however, that the hospital district was lending its credit in violation of Article VI, Section 25. As pointed out in the *City of La Habra*[2] case, any time a solvent lessee enters into a long-term lease, the existence of that instrument enhances the credit standing of the lessor. That frequently makes it possible for lessor to borrow money which otherwise would not be available. In this instance, it did enable plaintiff lessor to borrow money by selling debentures. Nevertheless, the hospital district, as lessee, was not the guarantor or endorser of lessee's (sic)[3] credit. Lessee simply contracted for the rental of hospital facilities and agreed to pay therefor. We hold that the arrangement did not violate Article VI, § 25." 474 S.W.2d at 6.

▮ As in *New Liberty Medical*, the governmental entity is not the guarantor or endorser of the Corporation's credit, and the prohibition against the lending of credit in Article VI, Section 25 is not violated. That the Corporation's ability to obtain the construction loan may have been enhanced by the fact of its lease with the District is immaterial, for in no event is the District obligated to pay rent beyond a year.

Appellant County also argues that the financing scheme in this case may result in the Library District making a gift of its property to a private entity and should therefore be declared invalid under Article VI, Sections 23 and 25. The gravamen of the County's complaint on this score seems to be that the banks could demand the balloon payment from the Corporation after five years. The Corporation would not be able to pay. The banks could foreclose, and if the District had not recorded its deed of trust, the banks, according to appellant, would have the property and the District would have received nothing in return.

The Missouri Constitution, Article VI, Section 23, forbids a political corporation or subdivision of the state to "grant public money or thing of value to or in aid of any corporation, association or individual" except as otherwise provided in the constitution. Section 25 of Article VI forbids a political corporation or subdivision of the state to "grant public money or property to any private individual, association or corporation," and goes on to list several exceptions to this proscription. The term "grant," as used in the cited constitutional sections, has been treated by the Supreme Court of Missouri as synonymous with "give away." See *St. Louis Children's Hospital v. Conway*, 582 S.W.2d 687, 691 (Mo. banc

---

**2.** *City of La Habra v. Pellerin*, 216 Cal.App.2d 99, 30 Cal.Rptr. 752 (1963).

**3.** Obviously, the court meant "lessor's."

1979). We so treat it here, but find no sign of a violation of the prohibition. The arrangement under review calls for the District to convey a tract of land to the Corporation, admittedly a private entity, in return for a promissory note for $325,000 and a deed of trust. Appellant County does not explicitly contend that the note and deed of trust do not constitute consideration and that this transfer is therefore a gift. The value of the note and the benefits to be derived by the District from the sale are and were matters for the judgment of the District's board of trustees, not for this court.

Once the property has been sold by the District to the Corporation, any transfer to the banks will occur at the hands of the Corporation. If the Corporation defaults, and the banks take the property, it cannot be said that the banks receive a gift, since their right to take the property was given to them in consideration of the construction loan. Since the banks cannot be deemed in the event of default to have received a gift, then the District cannot be deemed to have made a gift to them. Hence, appellant County's argument that in the event of default the District will have made a gift of the library to the banks is not a tenable one.

For the reasons stated, it cannot be said that the financing plan constitutes a gift by a governmental entity to a private corporation, i.e. either to the not-for-profit corporation or to the banks. The prohibitions against such gifts in Article VI are, therefore, not violated.

The judgment is affirmed.

DOWD and STEWART, JJ., concur.