Dear Commissioner Aery:
This opinion is in response to your question asking:
 Is it legally permissible for any or all of the Missouri State Library, the public libraries of Missouri or the libraries of Missouri public institutions of higher education to enter into a contract for services which incorporate the Principles and Guidelines for Transfer of OCLC-Derived Machine-Readable Records?
Online Computer Library Center (OCLC) is a not-for-profit corporation in Dublin, Ohio. It operates a computerized cataloging service which utilizes a shared database of bibliographic records. OCLC provides the computer storage and software necessary to create and manipulate the records, and parties who contract with OCLC or with OCLC's brokers create the records by entering the necessary data on their holdings through computer terminals located at each library.
OCLC makes its processes, products and services available to "user" libraries, such as the Missouri State Library, through a broker named Missouri Library Network Corporation (MLNC). OCLC and MLNC enter into a contract and as a part of that contract MLNC promises that any users of the processes, products or services of OCLC (such as the State Library) must "undertake not less than the responsibilities described in Appendix 3 to this Agreement". Paragraph 9 of Appendix 3 provides in pertinent part:
 9. The use and transfer by Users of OCLC-Derived Records (as defined below) received from OCLC or otherwise obtained during the term of this or a preceding agreement with OCLC, and supplied by OCLC on OCLC/MARC Subscription tapes, Local Database Creation tapes or MICROCON Program output tapes, including derivative works made from such records, will be in accordance with the latest revision received from time to time of the document Principles and Guidelines for Transfer of OCLC-Derived Machine-Readable Records, a copy of the current version of which is attached hereto as Exhibit 1 [emphasis in original]. However, if, within sixty (60) days after a User's receipt of a new revision of that document, the institution or other entity which has contracted on behalf of User gives Network notice of termination of their agreement, then the new revision of the document will not replace the existing version as to such entity and User. As to OCLC-Derived Records other than those supplied by OCLC on OCLC/MARC Subscription tapes, Local Database Creation tapes or MICROCON Program output tapes, User will not permit online access to the records or derivative works except to their end user patrons, nor will they transfer copies of such records or derivative works in machine-readable form to any entity, except as OCLC and the contracting entity may otherwise agree in writing. Users' rights include non-exclusive licenses permitting the Users to use, copy, display and distribute the catalog records and derivative works referred to above under all copyrights owned or controlled by OCLC and by Network. In the event of any breach of this provision by a User, its liabilities will be limited to those arising in contract, and will not include liabilities arising under the copyright laws of the United States or other jurisdictions. The rights and obligations of Users and their contracting entities under this provision shall survive any expiration or termination of their agreements with Network. As used herein, "OCLC-Derived Records" means, as to any User, all records stored in the OCLC Online Union Catalog other than (i) records designated in such catalog as original cataloging by the User, and (ii) records to which the User's holding symbol has been attached by Tapeloading. . . .
(Emphasis added.)
The Principles and Guidelines for Transfer of OCLC-Derived Machine-Readable Records (Principles and Guidelines) are attached to this opinion as Exhibit 1. Examples of restrictions placed on the State Library's use of the computer tapes are as follows (please refer to the attached Principles and Guidelines for definitions of terms "member library", "nonmember library", "member network", "third party", "records", "transfer", and "transfer of records"):
I. Principles
 The Guidelines described below have been established in accordance with the following principles:
* * *
 3. OCLC believes that its member libraries and member networks will act with good faith toward OCLC and other member libraries. OCLC will not invoke copyright against any member libraries with which contracts have been executed which incorporate these Principles and Guidelines, but OCLC reserves its right to invoke copyright against uses by third parties not authorized by OCLC under the Guidelines below or under separate agreement.
II. Guidelines
 1. Each member and nonmember library may use records without restriction, and may transfer records of its own holdings, to any library or group of libraries. Each nonmember library to which transfers of records are made under this guideline shall first agree (in a form approved by and with a copy furnished to OCLC) to accept these Principles and Guidelines as to records received.
* * *
 3. Each member and nonmember library may transfer records to third parties, subject to prior written agreements with OCLC. Excluded from this requirement for prior written agreements, however, are any transfers that may be made to third parties under Guideline 2 above. Each member and nonmember library may transfer records of its own holdings to third party vendors for COM production or other record-processing purposes, provided that each third party vendor has first signed an agreement with the library (in a form approved by OCLC and with a copy furnished to OCLC) that the third party will not copy or use the records except to carry out the work contracted for, will not transfer the records to other entities and will return all copies of the records upon the request of the library which has engaged it.
(Emphasis added.)
I. RESTRICTIONS ON COPYING OF RECORDS
A. State Library.
The State Library, as a library User, would be allowed to enter its card catalog entries and bibliographic information on new materials into OCLC's database, along with the entries of local libraries if OCLC permits it. These entries would go into OCLC's nationwide databank which contains entries from all over the country and entries from the Library of Congress. The User and its patrons would have access to this databank to determine such things as the existence and location of publications. OCLC provides to the User two different types of computer tapes: (1) a tape containing the records of an individual library provided to that library and (2) a multi-institutional tape containing records of institutions which have given permission for their records to be received by the requesting library. These tapes can be useful in several areas, including the management of library inventory and circulation. In order for a library such as the State Library to become a User, it must sign the agreement with MLNC which contains at least the provisions of Appendix 3 of the Network Agreement which MLNC would have signed with OCLC. As shown above, these provisions prohibit the State Library, as a User, from giving the tapes, or parts thereof, which it has obtained from OCLC to third parties who have not also become bound by the provisions of Appendix 3. This is to prevent third parties from copying the tapes without obtaining OCLC's permission and is for the purpose of allowing OCLC to control how the records are used.
The issue arises as to whether the restrictions on the State Library as a User pertaining to the providing of copies of the computer tapes it receives from OCLC to parties who do not have agreements with OCLC or MLNC violate the requirements of state law concerning the right of the public to copy public records.
Before the enactment of the Open Records Law, Sections610.010 to 610.030, RSMo,[1] the general legal principles on the availability of government records to the public were set forth in Disabled Police Veterans Club v. Long, 279 S.W.2d 220
(Mo.App. 1955) as follows:
 Generally, any writing or document constituting a public record is subject to inspection by the public. [citation omitted] . . . . And the right to inspect carries with it the right to make copies. [Citation omitted.] Id. at 223.
These principles are still the law even subsequent to the passage of the Open Records Law. State ex rel. Gray v.Brigham, 622 S.W.2d 734, 735 (Mo.App. 1981).
Missouri's statutes on government records consist of the Open Records Law cited above and the State and Local Records Law at Sections 109.200 to 109.310, RSMo 1986.[2] The Open Records Law is applicable if the State Library is a "public governmental body" as that term is defined in Section 610.010(2) and if the computer tapes are "public records" as that term is defined in Section 610.010(4). Section 610.010(2) defines a "public governmental body" to include any "administrative governmental entity created by the . . . statutes of this state . . . ." The State Library is established in Chapter 181, RSMo 1986. Therefore, it is a "public governmental body".
Whether a computer tape is a "public record" and thereby subject to public inspection and copying is a question not yet addressed by Missouri courts. The definition of "public record" in Section 610.010(4) provides:
 (4) "Public record", any record retained by or of any public governmental body including any report, survey, memorandum, or other document or study prepared and presented to the public governmental body by a consultant or other professional service paid for in whole or in part by public funds; provided, however, that personally identifiable student records maintained by public educational institutions shall be open for inspection by the parents, guardian or other custodian of students under the age of eighteen years and by the parents, guardian or other custodian and the student if the student is over the age of eighteen years;
There is no further definition of the term "record" provided in the Open Records Law. However, there is a definition of "record" in Section 109.210(5) of the State and Local Records Law which provides:
 (5) "Record", document, book, paper, photograph, map, sound recording or other material, regardless of physical form or characteristics, made or received pursuant to law or in connection with the transaction of official business. Library and museum material made or acquired and preserved solely for reference or exhibition purposes, extra copies of documents preserved only for convenience of reference, and stocks of publications and of processed documents are not included within the definition of records as used in sections 109.200 to 109.310, and are hereinafter designated as "nonrecord" materials;
The computer tapes in question would be "other material, regardless of physical form or characteristics, . . . received . . . in connection with the transaction of official business." This conclusion is supported by the Supreme Court of New Hampshire's decision that this same language in the New Hampshire statute, RSA 8-B:7, includes computer tapes. Mengev. City of Manchester, 311 A.2d 116, 118 (N.H. 1973). Courts in other states have also decided that the right to inspect and copy a public record is no different if that record is in the form of a computer tape, absent contrary statutory provisions.Minnesota Medical Association v. State of Minnesota,274 N.W.2d 84 (Mn. 1978); Seigle v. Barry, 422 So.2d 63, 65
(Fl.App. 1982); Ortiz v. Jaramillo, 483 P.2d 500, 501-502
(N.M. 1971); Martin v. Ellisor, 223 S.E.2d 415, 418 (S.C. 1976).
Not all public records under the Open Records Law have to be open records. Section 610.021 provides:
 Except to the extent disclosure is otherwise required by law, a public governmental body is authorized to close meetings, records and votes, to the extent they relate to the following:
 [Subsections (1) through (13) and (15) are omitted.]
 (14) Records which are protected from disclosure by law;
The above-quoted provisions from Appendix 3 and the Principles and Guidelines demonstrate that OCLC has drafted the contract in a way to protect the records generated under its contract, including the computer tapes, from copyright infringement. We have information that other entities which have contributed to the data bank are also applying for copyrights. Federal copyright statutes generally prohibit the copying of copyrighted works without the authorization of the owner of the copyright. 17 U.S.C. § 106 provides in part:
 Subject to sections 107 through 118, the owner of copyright under this title has the exclusive rights to do and to authorize any of the following:
 (1) to reproduce the copyrighted work in copies or phonorecords;
 (2) to prepare derivative works based upon the copyrighted work;
 (3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;"
* * *
These general prohibitions are modified by subsequent sections dealing with "fair use" (§ 107), reproduction by libraries (§ 108) and other matters (§§ 109 et seq.). Whether OCLC's copyright can be successfully challenged in court or whether the State Library's copying and transferring of these tapes can be defended under §§ 107 et seq., presents substantial questions of law and need not be determined at this point. There are legitimate issues as to whether the copyright laws would be broken by the State Library allowing the general public to copy the OCLC tapes. The Open Records Law allows a public governmental body to restrict the copying of its records by rendering them "closed" if the records fall within one of the categories set forth in Section 610.021. A record restricted from being copied by federal copyright law is a record "protected from disclosure by law" under subsection 14 of Section 610.021 to the extent that it is protected from being copied. Given the copyright issues involved and given the fact that the information on these tapes which was obtained from the State Library's original records is still available for inspection and copying from those latter records, the restrictions of Appendix 3 and the Principles and Guidelines may be agreed to by the State Library without violation of state laws regarding the inspection and copying of government records.
B. Other Libraries.
It is unnecessary to decide whether local public libraries and libraries of Missouri public institutions of higher education are "public governmental bodies" under the Open Records Law and whether these OCLC computer tapes would be considered public records of those bodies if they should sign contracts with OCLC and MLNC. Even assuming they would be public governmental bodies and public records, the Open Records Law would not prevent them from entering into the terms of Appendix 3 regarding the restrictions on the copying of those records for the same reasons as set forth regarding the State Library.
II. HOLD HARMLESS CLAUSE
There is a ground upon which we would advise that the State Library should not sign the User agreement as contained in Appendix 3. Under Article V, Section B (p. 18), of the Network Agreement, Users must sign an agreement containing not less than the responsibilities provided for in Appendix 3. Paragraph 10 of Appendix 3 (p. 5) provides:
 10. Each User grants to OCLC, its other Users or designees the irrevocable, non-exclusive, royalty-free, sublicenseable, worldwide right to use, copy, display, publish, prepare derivative works from and distribute all bibliographic records, library holdings and other information furnished to OCLC during the term of this Agreement by User or any entity acting on its behalf, under any copyright, patent, secrecy or other proprietary right therein owned or controlled by User, for all purposes consistent with the corporate purposes set out in OCLC's Articles of Incorporation as hereafter amended from time to time. User warrants that no use, reproduction or transfer by OCLC, its other Users or designees of such bibliographic, holdings or other information will infringe any copyright, patent, trademark, secrecy or other proprietary rights owned or controlled by third parties, and User agrees to defend, indemnify and hold Network and OCLC harmless from claims to the contrary.
(Emphasis added.)
To agree to the underlined terms, as presently worded, is to waive the state's sovereign immunity, that is, the legal prohibition against the state being sued in its own courts for damages from the torts of its officers and agents. Only the legislature can waive this immunity.
 The sovereign immunity of the state and its entities may be waived only by the legislature, not by officers, agents or employees of the state [citation omitted]. To the extent that the contract with plaintiff as a student may be construed as obligating the university to respond in damages for the injury, the contract is void because beyond the capacity and authority of any officer or employee of the university. Fowler v. Board of Regents for Central Missouri State University, 637 S.W.2d 352, 354 (Mo.App. 1982).
Arriving at the same conclusion are Attorney General Opinion No. 78, Summers, 1972 and Attorney General Opinion No. 37, Harris, May 22, 1950. A copy of each is enclosed.
Based on these legal authorities, the State Library could not sign such an agreement unless it had express legislative authority to do so. It does not have such authority. The only waivers of sovereign immunity presently enacted by the legislature are contained in Section 537.600.1, RSMo 1986, and pertain to motor vehicle accidents and dangerous conditions on state property. They would not apply to the subject matter of paragraph 10 of Appendix 3. Furthermore, there has been no legislative authorization by way of appropriations specific to this contract as in V.S. DiCarlo Construction Company,Incorporated v. State, 485 S.W.2d 52 (Mo. 1972).
These same principles of sovereign immunity and waivers therefrom apply to libraries of Missouri public institutions of higher education. Fowler v. Board of Regents for CentralMissouri State University, supra.
As for county library districts under Sections 182.010 to182.130, RSMo 1986, city libraries under Sections 182.140 to182.280, RSMo 1986, city-county libraries under Sections 182.291
to 182.301, RSMo 1986, and municipal library districts under Sections 182.480 to 182.510, RSMo 1986, they are separate legal entities and are political subdivisions of this state. See Attorney General Opinion No. 20, O'Halloran, 1972, a copy of which is enclosed; Section 70.210, RSMo 1986; and Section182.480. Consolidated public library districts under Sections182.610 to 182.670, RSMo 1986, are also political subdivisions of this state. Section 182.630. As political subdivisions, they enjoy the state's sovereign immunity. McConnell v. St. LouisCounty, 655 S.W.2d 654, 656 (Mo.App. 1983). This immunity, again, is waivable only by an act of the legislature. Cassidyv. City of St. Joseph, 247 Mo. 197, 152 S.W. 306, 309 (1912), and Page v. Metropolitan St. Louis Sewer District, 377 S.W.2d 348,352 (Mo. 1964). The only applicable statute is Section537.600.1 pertaining to automobile accidents and dangerous conditions on property. These waivers are clearly not applicable here. Therefore, there is no authority for local public libraries to waive sovereign immunity through the provisions of paragraph 10 of Appendix 3.[3]
CONCLUSION
It is the opinion of this office that the Missouri State Library, the libraries of Missouri public institutions of higher education and local public libraries formed under Chapter 182, RSMo 1986, can enter into the restrictions on the copying of records received from OCLC as those restrictions are set forth in Appendix 3 to the OCLC/MLNC agreement and in the Principles and Guidelines attached thereto without violating state laws regarding the availability of governmental records for copying by the public, but the aforementioned governmental entities may not enter into the hold harmless clause in paragraph 10 of Appendix 3 to the OCLC/MLNC agreement because to do so would be an unauthorized waiver of sovereign immunity.
Sincerely,
 WILLIAM L. WEBSTER Attorney General
Enclosures: Opinion No. 78, Summers, 1972 Opinion No. 20, O'Halloran, 1972 Opinion No. 37, Harris, May 22, 1950
[1] References herein to the statutory sections comprising the Open Records Law are to Revised Statutes of Missouri, 1986 as amended by House Committee Substitute for Senate Substitute for Senate Bill No. 2, 84th General Assembly, First Regular Session.
[2] Sections 182.815 and 182.817, RSMo 1986, govern the disclosure of "library records". However, as the term "library record" is defined in Section 182.815(3), it includes only those records that identify "a person or persons as having requested, used, or borrowed library material". The tapes with which we are concerned here do not come within that definition.
Section 109.180, RSMo 1986, grants the public the right to inspect records "kept pursuant to statute" "[e]xcept as otherwise provided by law". This latter phrase incorporates the closed records provisions discussed in the text of this opinion. Therefore, the issues involved in this opinion request can be resolved without deciding whether these computer tapes are "kept pursuant to statute".
[3] As to the State Library and Missouri public institutions of higher education, there are also substantial problems with hold harmless clauses under the provisions of Article III, Section39, Missouri Constitution (as amended 1986) which prohibits the General Assembly from having the power:
 (1) To give or lend or to authorize the giving or lending of the credit of the state in aid or to any person, association, municipal or other corporation;
 (2) To pledge the credit of the state for the payment of the liabilities, present or prospective, of any individual, association, municipal or other corporation;
There is also a question under Section 33.040, RSMo 1986, whether an agency can enter into such a limitless contingent liability without express authority of law. State ex rel.Armontrout v. Smith, 182 S.W.2d 571, 573-574 (Mo. banc 1944).
The constitution contains analogous provisions concerning the lending of credit and contracting of debts beyond a certain limitation for political subdivisions of this state, such as local libraries. Article VI, Section 23, Missouri Constitution provides:
 No county, city or other political corporation or subdivision of the state shall own or subscribe for stock in any corporation or association, or lend its credit or grant public money or thing of value to or in aid of any corporation, association or individual, except as provided in this constitution.
See also Article VI, Section 25, Missouri Constitution. ArticleVI, Section 26(a), Missouri Constitution, provides:
 No county, city, incorporated town or village, school district or other political corporation or subdivision of the state shall become indebted in an amount exceeding in any year the income and revenue provided for such year plus any unencumbered balances from previous years, except as otherwise provided in this constitution."
An agreement to indemnify can be considered a "lending of credit". McQuillin Mun. Corp. (3d Ed) Volume 15, Section 39.30. See also St. Charles City-County Library District v.St. Charles Library Building Corporation, 627 S.W.2d 64
(Mo.App. 1981): "The purpose of the constitutional prohibition against the lending of credit is to prohibit the state or a political subdivision from acting as a surety or guarantor of the debt of another." Id. at 69.
 I. Principles
(See Definitions in Part III below.)
The Guidelines described below have been established in accordance with the following principles:
1. The continued growth and enrichment of the OCLC database for the benefit of the OCLC membership and the library world in general is both necessary and desirable.
2. The sharing of information in all formats, including machine-readable records, among members of the library world in general is both necessary and desirable.
3. OCLC believes that its member libraries and member networks will act with good faith toward OCLC and other member libraries. OCLC will not invoke copyright against any member libraries with which contracts have been executed which incorporate these Principles and Guidelines, but OCLC reserves its right to invoke copyright against uses by third parties not authorized by OCLC under the Guidelines below or under separate agreement.
 II. Guidelines
(See Definitions in Part III below.)
1. Each member and nonmember library may use records without restriction, and may transfer records of its own holdings, to any library or group of libraries. Each nonmember library to which transfers of records are made under this guideline shall first agree (in a form approved by and with a copy furnished to OCLC) to accept these Principles and Guidelines as to records received.
2. Each member and nonmember library may transfer records of its own holdings, without restriction, to (i) member networks; (ii) state and multi-state library agencies (in addition to those state libraries to which transfers can be made under Guideline 1 above); and (iii) other bibliographic organizations which are exempt from the payment of federal income taxes (or equivalent foreign taxes in the case of non-U.S. organizations). The use and transfer of records by member networks, library systems operated by or under the aegis of one or more state library agencies, and other tax-exempt bibliographic organizations will be as provided in separate understandings with OCLC. In the event that a group of libraries to which transfers of records are made under Guideline 1 above is a library system operated by or under the aegis of one or more state library agencies, then this Guideline 2 will apply to the use and transfer of records by that group.
3. Each member and nonmember library may transfer records to third parties, subject to prior written agreements with OCLC. Excluded from this requirement for prior written agreements, however, are any transfers that may be made to third parties under Guideline 2 above. Each member and nonmember library may transfer records of its own holdings to third party vendors for COM production or other record-processing purposes, provided that each third party vendor has first signed an agreement with the library (in a form approved by OCLC and with a copy furnished to OCLC) that the third party will not copy or use the records except to carry out the work contracted for, will not transfer the records to other entities and will return all copies of the records upon the request of the library which has engaged it.
4. When transfers under Guideline 1 above are made to machine-readable union catalogs accessible by nonmember libraries, the libraries making the transfers will so inform OCLC and, together with the other participants in the union catalog, will exert their reasonable best efforts, on a voluntary basis, to provide OCLC copies of the union catalog's bibliographic holdings and titles when it is determined by OCLC that the holdings and titles of such union catalog would enhance the OCLC database. The addition of these holdings and titles to the OCLC database will be at OCLC expense. It is requested that the holdings and titles be provided at approximately semi-annual intervals on magnetic tape. Unless otherwise indicated prior to the time submitted to OCLC, the holdings and titles will be regarded as contributed permanently to the OCLC database for uses consistent with OCLC Articles of Incorporation.
5. Upon termination of its membership in OCLC, a former member library may transfer records of its holdings, without restriction, to any third party from which the library elects to obtain bibliographic cataloging services.
6. When a nonmember organization makes available to OCLC bibliographic information that is subject to usage or transfer restrictions, and OCLC nevertheless elects to accept the information for addition to the OCLC database, OCLC will notify libraries to which it makes the information available, and rights to use and transfer records based on such information under these Guidelines will be subject to the same restrictions.
III. Definitions
1. The term "member library" means a general member of OCLC as defined in its Code of Regulations.
2. The term "nonmember library" means any library other than a member library.
3. A "member network" is an OCLC-affiliated regional, state or multi-state library network organization which is in contract with OCLC to provide OCLC services and products or to assist OCLC to provide such services and products to general members of OCLC.
4. A "third party" is an entity or person other than OCLC and other than a member library, a nonmember library of a member network.
5. The term "records" means machine-readable bibliographic records and holdings data (including copies thereof derived from the OCLC database and transferred by OCLC on OCLC-MARC Subscription tapes, Local Database Creation tapes and/or MICROCON Program output tapes (and records which, although available through such tape services, are acquired by electronic transfer from OCLC), or subsequently re-transferred by any other institution via any machine-readable media or electronic-based transmission together with derivative works, in machine-readable form made from such records and holdings data. However, records do not include, as to any member or nonmember library (i) bibliographic records designated in the OCLC data base as original cataloging by such member or nonmember library and (ii) bibliographic records derived by such member or nonmember library from sources other than the OCLC database and to which its holdings symbol has been attached by tapeloading. Such excluded records, together with OCLC-derived records in eye-readable form (including microform records) are freely transferable to third parties and are not dealt with in these Principles and Guidelines.
6. The terms "transfer" and "transfer of records" refer to all sales, exchanges, gifts, sharing and other transfers, and all online access except online access provided to end-user patrons of a library in authorized possession of the records.
IV. Handling Requests and Appeals
1. OCLC management will establish a Database Committee of OCLC staff members to consider and respond promptly to routine requests of libraries concerning transfers of records to third parties according to these Principles and Guidelines.
2. Disagreement may arise regarding the interpretation of these Guidelines. In the event a disagreement has not been resolved within a period of six months by a bona fide negotiation and discussion between OCLC and a library, the library may appeal to the OCLC Users Council for resolution unless the dispute is the subject of current or past litigation. The Users Council president will appoint three Users Council delegates to meet with two persons appointed by the President of OCLC and two persons appointed by the library to hear the issue. A majority decision of the seven-member panel will be final and binding on both parties. Each party to the agreement will be responsible for its own expenses in the appeal, and the expenses of the Users Council team will be borne equally by both parties. In such an appeal, the duty of the panel members is to apply these Principles and Guidelines as they existed at the time the dispute or disagreement arose.
V. Maintaining the Currency of the Guidelines
The OCLC Board of Trustees will establish a committee to study issues and problems arising from the interpretation of these Guidelines. The committee may recommend to the Board, from time to time, modifications to the Guidelines. The committee may also recommend policies to the Board on additional ways to protect the database and on the establishment of fees and licenses. It is contemplated that the committee appointed by the Board of Trustees will include representation from the OCLC Board, OCLC Users Council, OCLC management and the directors of OCLC-affiliated networks. However, the Board will seek the advice of the OCLC Users Council and the network directors prior to determining the exact composition of the committee. The committee may invite others from the library and information community to assist in addressing specific policy issues.
VI. Modifications
With respect to any entity which is a party, either directly or indirectly through an OCLC-affiliated network, to a contract with OCLC which references or incorporates this document, this document may be modified by the OCLC Board of Trustees, after consultation with the committee established under Part V above, upon ninety (90) days' prior written notice by OCLC to the other party or parties to the contract.