The Honorable T. M. Macdonnell, M.D. Representative, District 140 State Capitol Building, Room 134 Jefferson City, Missouri 65101
Dear Representative Macdonnell:
This opinion is in response to your questions asking:
 Is it legal for a nursing home district board to enter into a lease and to operate a nursing home facility within the district's boundaries from a private entity, the lease term being for one year, renewable for additional years at the election of the nursing home district's board?
 Is it necessary to have a majority approval of the voters in said nursing home district before the nursing home district board can enter into a lease purchase agreement with a for-profit corporation to erect a satellite sixty bed nursing home in the nursing home district where lease contained ten successive options to renew for one year under same conditions and could be terminated by the nursing home district board on failure to renew the lease at the end of any year?
We have been provided information explaining that a corporation proposes to construct and thereafter lease to the Webster County Nursing Home District a 60-bed skilled nursing facility. Under the terms of the lease, the District, as tenant, would operate the facility. We understand the lease is structured to provide for a lease term of one year with ten successive options to renew for periods of one year. We presume that the annual lease payment would not exceed the income and revenue provided for such year plus any unencumbered balances from previous years. Upon failure to renew the lease at the end of any lease year, the lease is terminated.
The Webster County Nursing Home District was created and functions pursuant to the provisions of Sections 198.200 to198.360, RSMo. The powers of a nursing home district are detailed in Section 198.300, RSMo, as amended by House Bill No. 450, 86th General Assembly, First Regular Session (1991). Section 198.300, as amended by House Bill No. 450, provides in part:
 198.300. Powers of nursing home district. — 1. A nursing home district shall have and exercise the following governmental powers, and all other powers incidental, necessary, convenient or desirable to carry out and effectuate the express powers:
* * *
 (2) To acquire or convey land or structures in fee simple, rights in land and easements upon, over or across land and leasehold interests in land and tangible and intangible personal property used or useful for the location, establishment, maintenance, development, expansion, extension or improvement of any nursing home. The acquisition may be by
dedication, purchase, gift, agreement, lease, use or adverse possession or by condemnation. The conveyance may be by deed or lease;
 (3) To operate, maintain and manage the nursing home, and to make and enter into contracts for the use, operation or management of and to provide rules and regulations for the operation, management or use of the nursing home; [Emphasis added.]
* * *
Based on the plain meaning of the language used, a nursing home district is authorized by statute to acquire a facility through a lease and is authorized to operate a facility.
The next issue for consideration is whether the proposed lease violates Article VI, Section 26 of the Constitution of Missouri. Article VI, Section 26(a) provides:
 Section 26(a). Limitation on indebtedness of local governments without popular vote. — No county, city, incorporated town or village, school district or other political corporation or subdivision of the state shall become indebted in an amount exceeding in any year the income and revenue provided for such year plus any unencumbered balances from previous years, except as otherwise provided in this constitution.
Subsequent provisions of Article VI provide authorization for local governments to become indebted if the indebtedness is approved by the voters.
In Scroggs v. Kansas City, 499 S.W.2d 500 (Mo. 1973), the court determined that a city entering a thirty-year lease would act in violation of Article VI, Section 26(a) because the lease agreement created a present indebtedness and obligated the city to impose taxes in succeeding years to satisfy the debt.
In St. Charles City-County Library District v. St. CharlesLibrary Building Corporation, 627 S.W.2d 64 (Mo.App. 1981), the court of appeals considered the applicability of theScroggs case to the library district entering a one year lease with twenty-four successive options to renew for one year. If all twenty-four options were exercised, the district had the option of purchasing the building for $100. The failure to renew the lease at the end of any year resulted in the termination of the lease. The court determined the Scroggs
case was distinguishable from these facts, stating: ". . . because the lease may be terminated by the failure of the District to renew it at the end of any year, we hold that it does not violate the debt-limitation provisions of Article VI, Section 26 of the constitution." St. Charles City-CountyLibrary District v. St. Charles Library Building Corporation,supra, 627 S.W.2d at 68.
Based on the decision in St. Charles City-County LibraryDistrict v. St. Charles Library Building Corporation, supra,
we conclude a lease agreement such as the one described in your question would not create the indebtedness discussed in ArticleVI, Section 26(a) of the Constitution of Missouri and, therefore, would not require approval by the voters of the district.
CONCLUSION
It is the opinion of this office that 1) a nursing home district is authorized under Section 198.300, RSMo, as amended by House Bill No. 450, 86th General Assembly, First Regular Session (1991), to lease a nursing home facility within the district from a private entity and to operate such facility, and 2) where the lease provides for a term of one year with ten successive options to renew for periods of one year and upon failure to renew at the end of any lease year is terminated, such lease does not violate the debt-limitation provisions of Article VI, Section 26 of the Constitution of Missouri and does not require approval of the voters.
Very truly yours,
 WILLIAM L. WEBSTER Attorney General