Donald G. NIBECK, Respondent,

v.

WELLSTON SCHOOL DISTRICT, Appellant,

and

The Public School Retirement System of Missouri, Defendant.

No. 58701.

Supreme Court of Missouri, Division No. 2.

June 9, 1975.

Motion for Rehearing or to Transfer en Banc Denied July 14, 1975.

Moser, Marsalek, Carpenter, Cleary, Jaeckel, Keaney & Brown, Donald L. James, Patrick F. McLaughlin, St. Louis, for respondent.

Lashly, Caruthers, Thies, Rava & Hamel, Thomas E. Tueth, St. Louis, for appellant.

MORGAN, Judge.

Donald G. Nibeck, an employee of the Wellston School District, initiated an action against the district and the Public School Retirement System of Missouri wherein it was alleged that his contract of employment had been breached by the district and his retirement benefits had been affected adversely thereby. The trial court entered a judgment in favor of Nibeck from which the district has appealed. We affirm.

The cause was tried on factual stipulations adopted by all parties to this litigation.

On May 20, 1968, Nibeck and the district entered into a contract whereby the former agreed "to perform all duties incumbent upon him as High School Principal of the public schools within and for said school district for a term of two years" at an annual salary of $14,550. During the 1968–69 school year, Nibeck performed services as principal at Halter High School pursuant to said contract. In fact, Nibeck had occupied that position since 1940.

On March 17, 1969, Nibeck and the district executed a new contract by which the former agreed "to perform all duties incumbent upon him as Junior-Senior High School Principal of the public schools within and for said School District for a term of two years" at an annual salary of $16,550.

The latter contract was to become effective near the beginning of the 1969–70 school year at a time when one year remained on the earlier contract.

At the commencement of the 1969–70 school year, approximately 350 seventh and eighth grade students and ten teachers were transferred from another school in the district to Halter High School. The two grades are identified as the Junior High.

The stipulation of record details the underlying cause of the controversy as follows: "During the 1968–69 and the 1969–70 school years, there was a small group of black students who had no respect for the teachers' authority and who ignored many of the rules and regulations of the school district. There were also some black parents at Halter High School who complained that plaintiff, who is white, was unfair to students and that plaintiff made untrue accusations against black students. In September of 1969, the Wellston Board of Education issued a directive that plaintiff be relieved of his duties as disciplinarian at Halter High School and further that plaintiff be relieved of his duties of meeting with parents and enrolling new children. These duties were assigned to the two as-

sistant principals of Halter High School, Larman Williams, who is black, and Leonard Stephens, who is white. [Williams was later selected as principal.]" Further, that two members of the "Board of Education . . . would testify that the Board decided to remove plaintiff from his position as Principal of Halter High School because the Board felt that plaintiff was severely disliked by various elements of the student body and of the Wellston community, and the Board became aware around February, 1970, of a recent threat on plaintiff's life, said threat being directly related to plaintiff's position as Principal of Halter High. Also, the Board believed that plaintiff had continued to discipline students . . . subsequent to its September, 1969, directive to cease, and that plaintiff was unnecessarily harsh in his discipline. [That] plaintiff and . . . a teacher at Halter High School would testify that after September of 1969, plaintiff took no further action in disciplining students and that, thereafter, vandalism continued at Halter High School . . . the makeup of the Board of Education of Wellston was four black members and two white."

On February 10, 1970, the board of the district took the following action: ". . . Be it resolved that the Board of Education on the advice of counsel declare that alleged contract of D. G. Nibeck under date of 3/17/69 is considered by the Board to be null and void and that D. G. Nibeck is therefore removed and suspended from performing any duties thereunder; this resolution to be effective immediately on passage and the Superintendent is ordered to so notify D. G. Nibeck and remove from him emoluments of the teaching position he holds." At the same meeting, the board directed the superintendent "to make a *recommendation* to the Board of Education at the next board meeting for the *reemployment* of D. G. Nibeck as a teacher *for the remainder of the 1969–70 school year.*" (Emphasis added.) Since the latter resolu-

tion is the focal point of most of the arguments presented, for sake of clarity, some comment is called for at this time, to-wit: the tentative offer of reemployment was limited to the remainder of the 1969–70 school year and ignored employment for the 1970–71 school year called for in the second contract dated March 17, 1969.

Thereafter, the superintendent told Nibeck that he was authorized to "offer" him the position of Curriculum Coordinator for the rest of his contract period (under the first contract, presumably, as called for in the resolution) at the "same salary" of $16,550 per year (the amount called for in the second contract—which the board had declared void). Nibeck declined because "he felt that he was not qualified for the position because he had no special training along that line." He, then, directed a letter to the board that he was "willing, ready, and able to report for work as principal of Halter High School as agreed upon in a binding and legal contract entered into on 3–17–69." On April 13, 1970, the board advised Nibeck by letter that the ". . . Board of Education of the Wellston School District will not hire, contract with, nor otherwise employ you as a teacher in the Wellston School District for the next ensuing school year of 1970–71."

On the filing of the suit, the district filed a counterclaim for $833.35 which represented the increased compensation under the second contract for five months of the school year. The Public School Retirement System of Missouri remained "neutral" in regard to the merits of the dispute, and it and the other two parties have stipulated that such contributions or recalculations of benefits as are made necessary by the final judgment will be made.

The trial court upheld the validity of the second contract; found that the district had terminated Nibeck's employment on February 11, 1970, although he was ready to perform his duties; that no effective offer of other employment was made; and entered judgment in favor of Nibeck for those amounts due under the contract of March 17, 1969, and rejected the counterclaim.

On appeal, the district contends the second contract of March 17, 1969, was invalid "because of Sections 38(a) and 39(3) of Article III of the Missouri Constitution" and that it had a right to make and Nibeck a duty to accept a lawful reassignment.

■ The constitutional provisions noted, generally, place certain restrictions on the granting of public money "to any private person" or extra compensation after "a contract has been entered into and performed in whole or in part . . ." Reliance is placed on Kizior v. City of St. Joseph, 329 S.W.2d 605 (Mo.1959). Therein the city and a sanitation company executed a ten-year fixed-compensation contract for the collection and disposal of garbage. About four years later, the company notified the city that the company, due to substantial losses and circumstances beyond its control, needed more money in order to continue. The city approved a new contract with increased compensation and certain taxpayers filed suit and therein contended the new contract was violative of such constitutional restrictions. It is sufficient to note that this court agreed. However, the holding therein is not controlling in the instant case nor are the constitutional restrictions applicable. By the explicit language of the first contract, Nibeck agreed to perform the duties of "High School Principal." The second contract called for Nibeck to fill the position of "Junior-Senior High School Principal." This is not a case where extra compensation was granted for performing the same duties a party already was obligated to perform. Ten additional teachers and three hundred fifty students of grades seven and eight were transferred to the charge and control of Nibeck. His duties not only were increased but "changed" by the addition of the extra responsibility and burden of assuming the duties of principal over the Junior High. Cf. State ex rel. Dreer v.

Public School Retire. Sys., 519 S.W.2d 290 (Mo.1975).

Furthermore, § 168.111(6), RSMo 1969, V.A.M.S. (now repealed), provided that contracts such as that between the district and Nibeck could be terminated at any time by mutual consent of the parties. It is clear by the record made that the parties intended to terminate the first contract, and there is nothing to indicate that the second contract was invalid in any respect. The board's unilateral declaration that the second contract was "null and void" was itself a nullity.

From the record presented, there can be no doubt but that the district summarily discharged or "fired" Nibeck at the board meeting on February 10, 1970. Such is obvious, not only because the resolution passed by the board provided as much, but it declared that the contract under which Nibeck was serving was "null and void." The board had no authority, statutory or otherwise, to dismiss Nibeck and such action constituted a breach of contract for which relief could be sought. Williams v. Longtown School Dist. No. 71 of Perry Co., 468 S.W.2d 673[2] (Mo.App.1971); Lynch v. Webb City School District No. 92, 373 S.W.2d 193[4, 5] (Mo.App.1963). In this connection, "The general law of contracts applies . . ." Adamick v. Ferguson-Florissant School District, 483 S.W.2d 629, 631 (Mo.App.1972). Mo.Dig., Schools & School Dist.,

The latter part of the resolution passed by the board, heretofore quoted, only authorized the superintendent at the next meeting "to make a recommendation" as to the "reemployment" of Nibeck. At least at that moment, the board itself did not consider Nibeck to be an employee. Even if Nibeck had considered himself qualified for the new position and accepted, it is significant that the "offer" only covered the remainder of the 1969–70 school year and disregarded completely Nibeck's contractual right of employment for the 1970–71 school year. "A school board cannot breach a valid contract merely by making some new arrangement, no matter how legal it may otherwise be." Dye v. School Dist. No. 32, 355 Mo. 231, 195 S.W.2d 874, 881 (1946).

The district seeks to justify its action by contending, first, that it had an implied or inherent right to reassign Nibeck to other duties and, second, that an assignment was what it intended to make. We have given consideration to the first part of the argument and the authorities relied on,[1] but refrain from developing dicta in that connection for the simple reason the district, acting through the board, did not purport to make a reassignment but, in fact, discharged Nibeck and rejected the contract of employment under which he had been serving. To do otherwise, would call for this court to ignore the record presented.

The judgment is affirmed.

All of the Judges concur.

1. Gartenbach v. Board of Education, 356 Mo. 890, 204 S.W.2d 273 (1947), is the only Missouri case cited and it is so factually distinguishable that little guidance would be available. The aggrieved principal in the Gartenbach case, unlike Nibeck in the instant case, did not have a definite contract specifying the terms of her employment, and the court found, l.c. 275, an express statutory power to transfer personnel under § 10730, RSMo 1939. That statute was subsequently repealed and there is no similar statute in effect at this time. The question is considered in 78 C.J.S. Schools and School Districts § 198 and 68 Am.Jur.2d, Schools, § 136, from which, it can be seen that the question is generally controlled by statute or rules and regulations incorporated into the contract of employment. Absent such statutory provisions, resolution of the extent to which a school board may act in the "best interest" of a school in disregard of specific contractual obligations it has created will be left to a time when an actual reassignment is attempted.