**Virginia BARRY, Plaintiff,**

v.

**BLUE SPRINGS R–IV SCHOOL DISTRICT, Defendant.**

**No. 82–0296–CV–W–9.**

United States District Court, W.D. Missouri, W.D.

Feb. 2, 1983.

presented to the Court in *Clarendon,* supra.

George E. Kapke, Independence, Mo., for plaintiff.

Julius Oswald, Blue Springs, Mo., for defendant.

## ORDER

BARTLETT, District Judge.

Defendant filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b) and filed an affidavit and exhibits with its motion. The Court has not excluded these items and pursuant to Rule 12(b) will treat and refer to this motion as one for summary judgment. The plaintiff has been given ample opportunity to present any other material made pertinent to such motion.

In considering a motion for summary judgment, the law in this Circuit is stringent.

This Circuit has repeatedly emphasized the drastic nature of the summary judgment remedy. It should not be granted unless the moving party has established the right to a judgment with such clarity as to leave no room for controversy. *See Snell v. United States,* 680 F.2d 545, 547 (8th Cir.1982); *Jackson v. Star Sprinkler Corp.,* 575 F.2d 1223, 1226 (8th Cir.1978); *New England Mutual Life Insurance Co.*

*v. Null,* 554 F.2d 896, 901 (8th Cir.1977). This imposes a heavy burden on the moving party because the evidence will be viewed in the light most favorable to the nonmoving party. The court also must give the nonmoving party the benefit of all reasonable inferences to be drawn from the facts. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59 [90 S.Ct. 1598, 1609, 26 L.Ed.2d 142] (1970). "However, this Circuit recognizes the remedy's salutary purpose of avoiding useless and time consuming trials." *Butler v. MFA Life Insurance Co.,* 591 F.2d 448, 451 (8th Cir. 1979), *citing Percival v. General Motors Corp.,* 539 F.2d 1126, 1129 (8th Cir.1976); *Lyons v. Board of Education,* 523 F.2d 340, 347 (8th Cir.1975).

*Jewson v. Mayo Clinic,* 691 F.2d 405, 408 (8th Cir.1982).

Nevertheless, summary judgment, for the reasons stated herein, is appropriate in this case.

The plaintiff is a dietician who was employed by the defendant Blue Springs R–IV School District (hereinafter District) under an employment agreement dated May 1, 1981.

In the early weeks of the 1981–82 school year, financial problems arose in the food services program. The plaintiff herself, together with the Food Service Director and the Assistant Superintendent of Schools for the Blue Springs R–IV School District in charge of food service, notified the Board of Education for the Blue Springs R–IV School District (hereafter Board) that the program was "going in the red" in that the total daily expenditures exceeded the estimated daily receipts by approximately $690 per day. [Exhibit B, Defendant's Suggestions in Support of Defendant's Rule 12(b) Motion, filed June 10, 1982 (hereafter Defendant's Suggestions).] Under the Policies of the Board of Education of the District, the general control of the food service operation was delegated to the superintendent. Recommendations were made to the superintendent of the District on how to reduce this deficit. One of the suggestions was to eliminate the position of dietician. The su-

perintendent approved all of the suggestions for the elimination of the deficit spending in the food service department including the elimination of the plaintiff's position.

On November 16, 1981, plaintiff was informed by letter that her employment was to be terminated effective November 30, 1981. The letter to plaintiff indicated that her termination was "[d]ue to budgetary limitations in the area of food service" and went on to state "this action does in no way reflect any dissatisfaction on our part of the outstanding job you have done as dietician." Charles McGraw, deputy superintendent, who signed the letter, offered to provide plaintiff a recommendation for any future position. [Exhibit E, Defendant's Suggestions; affidavit of Dr. Gale T. Bartow, Superintendent of Schools for the Blue Springs R–IV School District, filed June 10, 1982.]

The District's written "Policies of the Board of Education" provided:

The superintendent shall, on behalf of the board and within the budgetary limits, employ non-teaching personnel and make appropriate promotions, demotions, transfers or dismissals. Any employee wishing to appeal a decision may do so by a written letter to the board of education.

[Sec. 3.32, at p. 14, Exhibit F, Defendant's Suggestions.]

Plaintiff did not appeal the decision by the superintendent by filing a written letter with the Board of Education.

Plaintiff in her Suggestions in Opposition to Defendant's Rule 12(b) Motion filed June 17, 1982, (hereafter Plaintiff's Opposition) states that the contents of defendant's brief "so mis-state the facts in this case as to verge on misrepresentation to this Court." However, neither plaintiff's affidavit filed January 3, 1983, nor her several suggestions in opposition reveal any real dispute with the facts as stated by defendant. Plaintiff admits that she was familiar with the policies of the Board of Education and of their operation. (Plaintiff's Opposition at p. 1.) Plaintiff does not deny knowledge of her right to appeal her dismissal to the Board

but contends, "To appeal such a decision would be an exercise in futility." [Plaintiff's Suggestions in Opposition filed January 3, 1983, at p. 4. (hereafter Plaintiff's Suggestions.)] Paragraph 5 of plaintiff's complaint alleges that the defendant "under color of state law, [denied] plaintiff due process of law and equal protection of the law, as guaranteed by the Fifth and Fourteenth Amendments to the Constitution of the United States...." Specific allegations of plaintiff's deprivations of property are limited to those enumerated in paragraph 6 of plaintiff's complaint.

a. The defendant District terminated plaintiff's classified personnel contract unilaterally and without just cause or excuse;

b. The defendant District unilaterally and without just cause or justification, eliminated the compensation to be paid plaintiff as set forth in her agreement without any opportunity on the part of the plaintiff to be heard;

c. That the defendant confiscated and removed from plaintiff certain substantial and valuable property rights, including the right to compensation under her employment agreement without affording plaintiff minimal due process of law, including notice and an opportunity to be heard.

In Plaintiff's Opposition, she contends that budgetary considerations are a prerequisite to *entering* employment contracts and that those considerations were met on the date of the entry of her contract, May 1, 1981. Although Section 3.32. of the Policies of the Board of Education, quoted *supra,* does not specifically so state, plaintiff contends, "The only appropriate recommendations to come from the principal [sic] would be for promotions, demotions, transfers or dismissals based on cause.... The only grounds for dismissal of the plaintiff would be some deficiency in her performance or moral grounds." [Plaintiff's Opposition at p. 2.]

Plaintiff contends that she was terminated without cause by the unilateral cancellation of the agreement by the District "with

the consent and approval of the Board of Education, not by the superintendent as suggested by the defendants." [Plaintiff's Opposition, p. 4.] This allegation is controverted by paragraph 8 of the affidavit of Dr. Gale T. Bartow, filed with Defendant's Suggestions. Although plaintiff has had ample opportunity to present evidence to support her assertion that Dr. Bartow's affidavit was untrue, none has been forthcoming.

On June 10, 1982, defendant filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b) for failure "to state a cause of action upon which relief may be granted to the Plaintiff" and failure to exhaust administrative remedies. Fed.R.Civ.P. 12(b) provides in pertinent part:

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Plaintiff, by order of this Court dated December 2, 1982, was advised that the motion of the defendant would be treated as one for summary judgment; she was given leave to apply for any discovery which she believed essential to oppose the motion. Plaintiff thereafter asked for and received an extension of time in which to file such a discovery request. However, none was requested and no new issues were raised in the Suggestions in Opposition filed with plaintiff's own affidavit on January 3, 1983.

An examination of the pleadings, the affidavits and exhibits filed by the parties reveals that there is no dispute as to any material fact. Plaintiff has not questioned whether the District had *bona fide* financial problems. Plaintiff also has not disputed the power of the Board through the superintendent to eliminate her position or to dismiss her under the "Policies of the Board of Education." (Plaintiff's Suggestions at p. 4.) Plaintiff has not alleged that the reason given for her dismissal, i.e., the financial problems of the District, was a subterfuge or attempt to mask some other unstated reason. Plaintiff also has made no allegations that the action of the defendant was arbitrary or capricious.

Plaintiff does contend that the only "cause" justifying her dismissal was for moral reasons or her failure to perform her duties. Plaintiff also contends that the defendant "would like to make this a case of administrative review." Plaintiff goes on to state that the defendant would then claim there was a failure to exhaust administrative remedies and concludes, "The plaintiff recognizes this Court's predisposition to favor such a proposition." (Plaintiff's Suggestions at p. 2.) This Court has no "predisposition to favor such a proposition," and has never required a plaintiff in a case brought under Section 1983 to exhaust state remedies as a prerequisite to maintaining such an action. Indeed such a requirement is generally not necessary in Section 1983 cases. *Patsy v. Board of Regents,* —— U.S. ——, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982).

■ Plaintiff's rights under § 1981 are not unlimited though. Section 1983 provides a cause of action to persons deprived of a liberty or property interest without due process of law. Plaintiff has made no allegations which could be construed as constituting a violation of the plaintiff's right to equal protection of the law or to any rights secured by the Fifth Amendment. Therefore, plaintiff has failed to state a claim that her rights to equal protection of the law and also under the Fifth Amendment to the Constitution of the United States were violated.

■ Neither party has cited a Missouri case involving the termination of a contract in a factual situation directly analogous to the one in this case. However, a decision by a Missouri court as to what procedural protections, if any, are required by Missouri law in a contract such as the one involved in

this case, would not determine whether the procedural requirements of the Fourteenth Amendment to the Constitution of the United States, have been satisfied. Federal constitutional law governs the question of what minimum procedural safeguards are necessary to govern a protected property interest. *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 430, 102 S.Ct. 1148, 1155, 71 L.Ed.2d 265 (1982). *See also Brenna v. Southern Colo. State College,* 589 F.2d 475, 477 (10th Cir.1978); *Johnson v. Board of Regents of Univ. of Wis.,* 377 F.Supp. 227, 235 (W.D.Wis.1974).

Federal courts are courts of limited jurisdiction. This Court derives its jurisdiction over plaintiff's claim by virtue of 28 U.S.C. § 1343, which provides in pertinent part:

(a) The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

. . . .

(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States. . . .

Plaintiff has brought this action under 42 U.S.C. § 1983 which provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

Plaintiff contends that she was denied procedural and substantive due process under the Fourteenth Amendment. Plaintiff bears the burden of demonstrating that her termination was for an impermissible reason. *Buhr v. Buffalo Public School Dist.*

*No. 38,* 509 F.2d 1196, 1203, n. 8 (8th Cir. 1974) (hereafter *Buhr*). The requirements of procedural due process apply only to the deprivation of an interest which comes within the protection of "property" or "liberty" under the Fourteenth Amendment. *Board of Regents v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972); *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972) (hereafter *Roth* and *Sindermann* respectively). "But the range of interests protected by procedural due process is not infinite." *Roth,* 408 U.S. at 570, 92 S.Ct. at 2705. In *Roth,* as in the case at bar, the refusal to reemploy (the termination in this case) did not involve any charge that might damage the plaintiff's good standing in the community or anything affecting her " 'good name, reputation, honor, or integrity.' " *Roth,* 408 U.S. at 573, 92 S.Ct. at 2707, quoting *Wisconsin v. Constantineau,* 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1971). Nor is there any indication that a stigma or disability has been imposed on plaintiff which would affect her future employability. This does not amount to a deprivation of "liberty" under the Fourteenth Amendment. *Cf. Roth,* 408 U.S. at 575, 574–75, n. 13, 92 S.Ct. at 2708, 2707–08, n. 13.

In order to have a "property" interest protected by procedural due process,

[A] person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. . . .

Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement.

*Roth,* 408 U.S. at 577, 92 S.Ct. at 2709.

■ In her case at bar, plaintiff's property interest was created by her contract with the defendant. Plaintiff's contract provided that she was to perform the duties of dietician for the term of 9½ months, com-

mencing August 13, 1981. The contract was dated May 1, 1981. [Exhibit A, Defendant's Suggestions.] The contract provided, *inter alia*, that: "[t]ermination other than by mutual consent by either party will be followed as provided for [*sic*] in Board Policy."

Thus plaintiff had an expectation of employment for a term of 9½ months except as provided in Board Policy and subject to the laws of the State of Missouri. The Missouri legislature has given the Boards of Education broad power "to make all needful rules and regulations for the organization ... and government in the school district." R.S.Mo. § 171.011 (1978). The "Policies of the Board of Education" were issued pursuant to this legislative grant of authority.

> [T]he boards of education or directors of school districts [have] broad powers and discretion in the management of school affairs.... These broad powers include the matter of tenure (*employment and termination of employment*, and the fixing of compensation) subject to the guidelines of the statute and to due process of law considerations, and subject also that in the exercise of its powers a board may not act in an unreasonable, arbitrary, capricious or unlawful manner....

*School Dist. of Kansas City v. Clymer,* 554 S.W.2d 483, 487 (Mo.App.1977) (emphasis added); *see also Magenheim v. Board of Education,* 347 S.W.2d 409, 417 (Mo.App. 1961).

The Missouri Constitution, Article VI, § 26(a) provides:

> No county, city, incorporated town or village, school district or other political corporation or subdivision of the state shall become indebted in an amount exceeding in any year the income and revenue provided for such year plus any unencumbered balances from previous years, except as otherwise provided in this constitution.

The Missouri Supreme Court held in *Linn Consol. High School Dist. v. Pointer's Creek Public School Dist. No. 42,* 203 S.W.2d 721, 724 (Mo.1947) that a debt "incurred by a voluntary contract ... is void if beyond the revenue actually provided for the year...." The District lacked the power to contract for an obligation beyond the revenue provided for that year.

The Missouri Supreme Court has held that although the "situation at the time a debt is contracted or created determines" whether it is void under the Constitutional prohibition, *Pullum v. Consolidated School Dist. No. 5,* 211 S.W.2d 30, 34 (Mo.1948), "executory and contingent contracts which are to be performed in futuro do not constitute an indebtedness against the municipal or quasi municipal corporation, in the sense of the constitutional inhibition, until such contracts have been performed." *Tate v. School Dist. No. 11,* 23 S.W.2d 1013, 1024 (Mo.1929). Therefore, the defendant had to consider the constitutional prohibition at the time it became obligated to plaintiff by the performance of her contract. Plaintiff's assertion that budgetary considerations are relevant only upon entering employment contracts is without merit.

Plaintiff's contract with the defendant protected her from termination other than for cause. The affidavit of Dr. Gale T. Bartow, *supra,* indicates that the Board believed a *bona fide* financial crisis constituted "cause" and such a crisis did in fact exist. *See e.g., Brenna v. Southern Colo. State College,* 589 F.2d 475 (10th Cir.1978); *Bignall v. North Idaho College,* 538 F.2d 243 (9th Cir.1976); *Johnson v. Board of Regents of Univ. of Wis.,* 377 F.Supp. 227 (W.D.Wis. 1974); *Jimenez v. Almodovar,* 650 F.2d 363 (1st Cir.1981) (change in academic program).

Plaintiff contends that she had "no right of appeal because she was not terminated for cause or for anything to do with her own performance." (Plaintiff's Suggestions at p. 3) Plaintiff also admits that the Board delegated personnel decisions to the superintendent but somehow reaches the conclusion that plaintiff's termination was not a personnel decision.

This School District attempts to circumvent the Constitution of the United States by simply making an administra-

tive decision rather than a personnel decision. This position is ludicrous. The School District had every right to eliminate the position plaintiff was filling. Plaintiff has no argument with that right. To appeal such a decision would be an exercise in futility. This School District cannot circumvent its written contracts by eliminating a position, rather than firing a person.

Plaintiff's Suggestions at p. 4.

There is nothing in the "Policies of the Board of Education," Sec. 3.32, quoted *supra*, that limits the superintendent to making "appropriate promotions, demotions, transfers or dismissals" for cause based upon the failure of performance or moral reasons. In fact, Sec. 3.32 requires the superintendent to act "within the budgetary limits." The plaintiff has not disputed in her affidavit or other pleadings that the District had a *bona fide* financial problem.

Plaintiff's argument carried to its logical conclusion would mean that whatever the financial condition of a school district, a school board faced with the necessity of cutting salary expenditures would only be able to make such reductions through teaching personnel. The incongruous result would be that a non-teaching dietician would have greater rights than a tenured teacher. See § 168.124 R.S.Mo. (1978).

In this particular case, *plaintiff was one of the persons who notified the Board of the financial exigencies of the food services program.* Plaintiff received notice of the action with an explanation of why the action was taken. Plaintiff was provided with a means of appeal of the action to the Board by written letter. Although Plaintiff has stated she was familiar with the policies of the Board, she did not avail herself of the opportunity to appeal the superintendent's action.

> The "standards of procedural due process are not wooden absolutes." The sufficiency of the procedures must be judged in the light of the totality of the circumstances. The fundamental requirement of due process "is the opportunity to be heard, 'at a meaningful time and in a

meaningful manner,' * * * 'The very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation.'"

*Birdwell v. Hazelwood School Dist.*, 491 F.2d 490, 495 (8th Cir.1974) (footnote omitted).

The Supreme Court has held:

> "Once it is determined that due process applies, the question remains what process is due." *Morrissey v. Brewer,* 408 U.S. [471] at 481 [92 S.Ct. 2593 at 2600, 33 L.Ed.2d 484 .... [T]he interpretation and application of the Due Process Clause are intensely practical matters and that "[t]he very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation." *Cafeteria Workers v. McElroy,* 367 U.S. 886, 895 [81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230] ... (1961). We are also mindful of our own admonition:

> > "Judicial interposition in the operation of the public school system of the Nation raises problems requiring care and restraint.... By and large, public education in our Nation is committed to the control of state and local authorities." *Epperson v. Arkansas,* 393 U.S. 97, 104 [89 S.Ct. 266, 270, 21 L.Ed.2d 228] ... (1968).

*Goss v. Lopez,* 419 U.S. 565, 577–78, 95 S.Ct. 729, 738, 42 L.Ed.2d 725 (1975).

In *Mathews v. Eldridge,* 424 U.S. 319, 334–35, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976), the Supreme Court set out certain factors meriting consideration in determining the required procedural safeguards.

[O]ur prior decisions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal

and administrative burdens that the additional or substitute procedural requirement would entail . . . .

*Id.* at 335, 96 S.Ct. at 903 (citation omitted); *see also Logan,* 102 S.Ct. at 1157.

In this case plaintiff had a significant property interest. However, because plaintiff was one of the persons who brought the financial problems of the food services program to the attention of the superintendent, she was informed of the entire "ten-point plan" to reduce the financial problem in the food services program (Affidavit of Dr. Gale T. Bartow at p. 2), and in this proceeding she does not dispute the reason given for eliminating her position, the risk of an erroneous deprivation and the value of any additional or substitute procedural safeguards are virtually nil. The District has a significant interest—as well as an obligation under the Missouri Constitution, Article VI, § 26(a)—not to "become indebted in an amount exceeding . . . the income and revenue provided for such year . . . ."

Plaintiff was given notice and an opportunity to present her position to the Board. It is not clear from the "Policies of the Board of Education" whether plaintiff would have been afforded some other type of hearing if she had appealed the action of the superintendent. Under the facts of *this* case though, it is irrelevant. The procedure provided to plaintiff was sufficient under the Fourteenth Amendment. *Cf. McClain v. LaFayette County Bd. of Educ.,* 673 F.2d 106 (5th Cir.), *reh'g denied,* 687 F.2d 121 (1982). However, this Court specifically makes no finding whether the procedures employed would be adequate under the Constitution if a "liberty" interest or some factor affecting plaintiff's future employability were involved in her termination.

Plaintiff in this case chose not to exercise her procedural right to appeal the decision of the superintendent to the Board. A party may waive her right to procedural due process. *Birdwell v. Hazelwood School Dist.,* 491 F.2d 490, 495 (8th Cir.1974). Plaintiff admits she knew the policies of the Board (Plaintiff's Opposition at p. 1). She had the opportunity to show her termination was for constitutionally impermissible reasons or that the decision was arbitrary and capricious. She did not take advantage of this opportunity. Plaintiff's failure to exercise this right constitutes a waiver.

Substantive due process claims may only be recognized where procedural due process rights are shown to exist. In this case the plaintiff has been afforded adequate due process procedures. "Where procedural due process is required, the state agency must pay attention to the evidence adduced and act rationally upon it." *Buhr,* 509 F.2d at 1203. There is no allegation the Board acted irrationally or that its action was arbitrary or capricious and accordingly there is no basis for finding the plaintiff was deprived of substantive due process. The plaintiff has not alleged facts which if proven would demonstrate that she was deprived of due process of law or that she had "some other federally protected right warranting our intervention in school board affairs." *Id.* Therefore, under the specific facts of this case, plaintiff was not deprived of a property interest without due process of law as guaranteed by the Federal Constitution.

Accordingly, the defendant's motion for summary judgment for failure to state a claim is granted.

IT IS SO ORDERED.