**132**

Buren KNOWLTON, et al.,
Plaintiffs–Appellants,

v.

RIPLEY COUNTY MEMORIAL HOSPI-
TAL, et al., Lucille Parmeter, Personal
Representative, Estate of Charles E.
Sparger, Deceased, Defendants–Respon-
dents.

No. 14901.

Missouri Court of Appeals,
Southern District,
Division Two.

Jan. 12, 1988.

Ted M. Henson, Jr., Poplar Bluff, for
plaintiffs-appellants.

Andrew C. Bullard, Kennett, for defend-
ants-respondents.

MAUS, Judge.

The appellants in this action are resi-
dents and taxpayers of Ripley County.
The respondents are the trustees of Ripley
County Memorial Hospital (Hospital) and
the Personal Representative of the Estate
of Charles F. Sparger, a deceased physi-
cian. The appellants seek to establish a
contract between the Hospital and the phy-
sician is invalid and restrain payments by
the Hospital to the personal representative
in satisfaction of that contract.

The parties have not questioned the
jurisdiction of this court. Nonetheless, it is
the duty of this court to consider that is-
sue. The Supreme Court has exclusive jur-
isdiction in all cases involving the construc-
tion of revenue laws of this state. Mo.
Const. Art. V, § 3 (amended 1982). That
provision encompasses questions concern-
ing the disbursement of tax funds, as well
as the imposition of taxes. *State v. Cribb*,
364 Mo. 1122, 273 S.W.2d 246 (banc 1954).

Also see *Regal–Tinneys Grove Special Road District of Ray County v. Fields,* 552 S.W.2d 719 (Mo. banc 1977). However, that constitutional provision does not require transfer when the law has been construed and an appeal can be disposed of by the application of that construction. *Hermel, Inc. v. State Tax Commission,* 564 S.W.2d 888 (Mo. banc 1978); *Browning–Ferris Ind. of Kansas City v. Dance,* 671 S.W.2d 801 (Mo.App.1984). As demonstrated in this opinion, this appeal can be disposed of by the application of decisions of the Supreme Court. This court has jurisdiction of this appeal.

The record before this court is sketchy. Primarily, that record consists of facts alleged in the pleadings and established by a responsive pleading or the absence thereof. In addition, there were oral stipulations by counsel when the cause was submitted to the trial court. From that background, the following is a condensation of the determinative facts.

The contract referred to was dated February 16, 1981, and essentially provided for the Hospital's employment of Dr. Sparger as a practicing physician for a period of ten years from April 17, 1981, to April 17, 1991. The Hospital was to pay Dr. Sparger a regular fixed annual salary in semimonthly installments. The amount of the regular annual salary was subject to prescribed annual increases and cost of living adjustments in the latter seven years of the contract. In addition, when the income of the Hospital produced by the services of Dr. Sparger in a contract year exceeded a designated amount, as incentive compensation, the Hospital was to pay a prescribed percent of the excess to Dr. Sparger.

Dr. Sparger performed under the contract from its inception on April 17, 1981, to the date of his death on December 11, 1982. Thereafter, an audit demonstrated that by reason of incentive compensation, the Hospital was indebted to the Estate of Charles F. Sparger in the amount of $72,068.83.

In July, 1984, the Hospital filed a petition for a declaratory judgment in the Circuit Court of Pemiscot County. The defendant was the Personal Representative of the Estate of Charles F. Sparger, Deceased. Count I of that petition sought a determination of the validity of the employment contract of February 16, 1981. Count II alleged that in the event the employment contract "is a valid contract, the parties have agreed to enter into a certain installment contract." A copy of the installment contract was attached. Count II sought a declaration that if the employment contract was determined to be valid, the installment contract "is a valid contract, binding the parties thereto." The installment contract attached to that petition has not been made a part of the record. Presumably, it was identical to an installment contract dated September 11, 1984, between the Hospital and the Personal Representative. That contract provides the Hospital will pay the Personal Representative the incentive compensation of $72,068.83, with interest at 10%, in monthly installments of $2,000 per month.

The record before the court does not include a copy of the answer to the declaratory judgment petition, if any, filed by the Personal Representative. On July 17, 1984, the case was called by the Circuit Court of Pemiscot County. A transcript shows the defendant entered her appearance. The parties waived venue and agreed to a trial by the court. They stipulated to the facts alleged in the petition. Upon that stipulation, without argument, discussion of the issues or the citation of authorities, the court stated as follows: "All right. Now, the Court will find that your, that your Contract referred to as Exhibit B, I mean A, attached to the Petition, is valid and binding on the parties. And, the Court will further find that your Contract to be entered into, which is Exhibit B, will be valid and binding on the parties." A written judgment to that effect was filed and entered that day.

In the present action the appellants presented the testimony of a reporter for a newspaper published in Ripley County. His testimony included the following. He learned the Hospital's attorney was "going to seek a judge's opinion on the contract." He asked the hospital board when and

where that was to occur. The board did not know. The reporter then called the hospital's attorney. He testified that the attorney "would not tell me where the argument before a judge was going to take place." He learned of the Pemiscot County judgment several days after it had been entered.

The trial court in this action determined that the judgment of the Circuit Court of Pemiscot County was res judicata on the issues presented by the appellants. It therefore adjudged the employment contract and the installment contract to be valid.

■ The basic point presented by the appellants is the employment contract of February 16, 1981, is "invalid because said agreement calls for the payment of money by a county hospital over a ten year period exceeding in each year the revenue provided for each year." They argue this is obvious and cite no authority other than Art VI, § 26(a) Mo. Const. (1945). In a subsidiary point the appellants assert the declaratory judgment of July 17, 1986, is not res judicata because it was obtained by collusion and the individual trustees were not party defendants in that action.

In response, the respondents make no argument and cite no authority to establish the employment contract does not violate Art. VI, § 26(a). Rather, they contend the appellants abandoned their basic point by failing to cite authority in support thereof. By the balance of their argument and citation of authorities, the respondents seek to establish that the declaratory judgment is res judicata on the issue of the validity of the employment contract of February 16, 1981.

The determination of the trial court that the declaratory judgment is res judicata of the issue presented by the appellants cannot be sustained. The appellants, as residents and taxpayers of Ripley County, have sufficient interest to assert the employment contract and expenditure of funds by the Hospital are contrary to the law and the Constitution. *Russell v. Callaway County*, 575 S.W.2d 193 (Mo. banc 1978); *Worlledge v. City of Greenwood*,

627 S.W.2d 328 (Mo.App.1982). A judicial stamp of approval resulting from the essentially ex parte summary proceedings in Pemiscot County in which only the contracting parties were participants cannot bar the rights of the appellants.

The requirements concerning joinder of necessary parties generally applicable to civil actions pending before a circuit judge are stated in Rule 52.04. Rule 87.04, specifically applicable to an action for a declaratory judgment, in part provides: "When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceedings." No decision in this state has been cited or found determining whether or not Rule 87.04 prescribes a scope of joinder of necessary parties broader than declared by Rule 52.04. See Annot., Declaratory Judgments: Parties, 71 A.L.R.2d 723 (1960). Cf. *Spencer v. Village of DeKalb*, 408 S.W.2d 78 (Mo.1966). In that declaratory judgment action, to establish the validity of a bond issue, it was said that holders under a prior bond issue had an "interest which would be affected by the declaration." *Id.* at 81. Also see *Reed v. City of Bartlesville*, 510 P.2d 1013 (Okla.App.1973); *Barry Laboratories, Inc. v. Wisconsin State Bd. of Pharmacy*, 26 Wis.2d 505, 132 N.W.2d 833 (1965). Also, no decision in this state has been cited or found determining whether or not Rule 87.-04 prescribes a limitation upon the doctrines of res judicata and collateral estoppel not generally applicable to judgments in civil actions. See 71 A.L.R.2d 723, supra; *New Castle County v. Sterling Properties, Inc.*, 379 A.2d 1125 (Del.1977). Because the respondents' contention of res judicata has no merit under principles applicable to judgments in civil actions generally, these issues need not be decided.

The generally applicable principle dealing with the scope of res judicata arising from judgments for or against a public body in respect to its constituency has received the following expression:

In the absence of fraud or collusion a judgment for or against a municipal corporation, county, town, school or irrigation district, or other local governmental agency or district, or a board or officers properly representing it, is binding and conclusive on all residents, citizens and taxpayers in respect to matters adjudicated which are of general or public interest such as questions relating to public property, contracts or other obligations. The rule is frequently applied to judgments rendered in an action between certain residents or taxpayers and a municipality, county or district or board or officer representing it, it being held that all other citizens and taxpayers similarly situated are represented in the litigation and bound by the judgment in the absence of fraud or collusion.

*Powell v. City of Joplin,* 335 Mo. 562, 73 S.W.2d 408, 410 (1934). Also see *Hixson v. Kansas City,* 361 Mo. 1211, 239 S.W.2d 341 (banc 1951). In this state, the rule has been extended to include not only issues raised, but those which could have been raised. *Powell v. City of Joplin,* supra.

However, as applied to those constituents not a party to the action in which the judgment was rendered, the principle is subject to the following limitation:

The rule just above stated is founded upon basic concepts of privity and virtual representation.... The doctrine is applicable if ... the interest of the represented and the representative are so identical that the inducement and desire to protect the common interest may be assumed to be the same in each and if there can be no adversity of interest between them.

*Drainage Dist. No. 1 Reformed v. Matthews,* 361 Mo. 286, 234 S.W.2d 567, 574 (1950). Whether or not parties are "in privity" is largely dependent upon their relation to the subject matter of the action. *Id.* "The doctrine of 'virtual representation' is applicable only when the interest of the represented and the representative are so identical that inducement and desire to protect the common interest may be assumed to be the same and if there is no adversity between them." *State ex rel. Fort Zumwalt School District v. Dickher-*

*ber,* 576 S.W.2d 532, 538 (Mo. banc 1979). A similar limitation has been expressed in regard to class actions. "The principles of due process require, however, that to be bound, the class must be adequately represented: that is, the interest of the representatives and that of the absent members must be compatible, not antagonistic." *State v. Kansas City Firefighters Local 42,* 672 S.W.2d 99, 123 (Mo.App.1984).

An example of the first quoted limitation is found in *Seibert v. City of Columbia,* 461 S.W.2d 808 (Mo. banc 1970). In that case, certain residents of the pre-existing City of Columbia were parties to an action resulting in a judgment that the annexation of an area was valid. In a subsequent action the City argued that judgment was res judicata of the validity of the annexation and barred a subsequent attack by certain residents of the annexed area. After stating the general rule quoted above, the court acknowledged the limitation upon its application. In holding the subsequent attack was not barred, the court said the following:

In view of that situation we do not think it would be just and equitable to hold that the virtual representation doctrine is fully applicable and that these plaintiffs are barred from litigating the issue of reasonableness of the annexation because of the *White [v. City of Columbia,* 461 S.W.2d 806 (Mo. banc 1970)] judgment. In other words, we find it difficult to conclude that the plaintiffs in the *White* case (all residents of the original city) were representing the interests of the plaintiffs in this case (all residents of the annexed areas) when they concluded that they would not attack the annexation on the issue of reasonableness in their suit.

*Seibert v. City of Columbia,* supra, at 811.

In this case it is difficult to conclude the Hospital was representing or even presenting the interests of the residents and taxpayers of the county who were opposed to the employment contract. The record demonstrates the Hospital's purpose was to secure a cursory approval of contracts already agreed to by the parties. That cur-

sory approval, even though embodied in a judgment, does not bar an attack upon the validity of those contracts by the appellants.

As stated, the appellants' basic point is that the employment contract contravenes Art. VI, § 26(a). They do not levy an independent attack upon the judgment of the trial court that the subsequent installment contract was valid. Such an issue will not be considered. Also, as stated, neither of the parties cites any authority upon the appellants' basic point. Nonetheless, because of public interest that point will be determined.

The constitutional provision relied upon provides: "No county, city, incorporated town or village, school district or other political corporation or subdivision of the state shall become indebted in an amount exceeding in any year the income and revenue provided for such year plus any unencumbered balances from previous years, except as otherwise provided in this constitution." Art. VI, § 26(a). The appellants presented no evidence concerning the indebtedness, the income and revenue, or any unencumbered balances of Ripley County for any year. Apparently, they were and are relying upon the proposition that the employment contract is invalid because it provides for payments by the county in future years.

At an early date it was declared: "It has been uniformly construed that this provision of the Constitution permits the anticipation of the current revenues to the extent of the year's income in which the debt is contracted or created, and prohibits the anticipation of the revenues of any future year." *Trask v. Livingston County*, 210 Mo. 582, 109 S.W. 656, 659 (1908). Also see *State ex rel. Christian County v. Gordon*, 265 Mo. 181, 176 S.W. 1 (1915). That rule has been succinctly stated as follows: "It has been well established that this means no contract of such a political subdivision is valid which obligates it to make payments in subsequent calendar years." *Grand River Township, DeKalb County v. Cooke Sales & Serv.*, 267 S.W.2d 322, 325 (Mo. 1954). The following is a more recent restatement of the constitutional restriction.

"We hold the 'Lease and Agreement' violates Section 26a, and is *void*, because it creates a present indebtedness and obligates the City to impose taxes in succeeding years to satisfy this indebtedness." *Scroggs v. Kansas City*, 499 S.W.2d 500, 505 (Mo.1973) (emphasis added). This rule is fortified by the corollary rule that "an indebtedness for the full or aggregate amount of the installments was incurred at the time the contract was entered into." *Sager v. City of Stanberry*, 336 Mo. 213, 78 S.W.2d 431, 438 (1934). Also see *New Liberty Medical & Hosp. Corp. v. E.F. Hutton & Co.*, 474 S.W.2d 1 (Mo. banc 1971); *State v. McWilliams*, 335 Mo. 816, 74 S.W.2d 363 (banc 1934); *Missouri Toncan Culvert Co. v. Butler County*, 352 Mo. 1184, 181 S.W.2d 506 (1944); *Ebert v. Jackson County*, 70 S.W.2d 918 (Mo.1934); *Anton, Raleigh & Wynne v. Wellston Fire Protection District*, 671 S.W.2d 378 (Mo. App.1984); *State ex rel. State Highway Commission v. City of St. Louis*, 575 S.W. 2d 712 (Mo.App.1978).

However, at an early date the scope of the constitutional bar was restricted by a judicial definition of the term "indebtedness." "A debt is understood to be an unconditional promise to pay a fixed sum at some specified time, and is quite different from a contract to be performed in the future, depending upon a condition precedent, which may never be performed, and which cannot ripen into a debt until performed." *Saleno v. City of Neosho*, 127 Mo. 627, 30 S.W. 190, 192 (1895). In other words, "said liability was contingent and for that reason is not a debt within the meaning of said section of the Constitution." *Woodmansee v. Kansas City*, 346 Mo. 919, 144 S.W.2d 137, 140 (banc 1940). Upon the basis that the expenditure of the tax revenues was contingent, the creation of the following obligations in future years has been held not to violate § 26(a): payment of hydrant rental, *Saleno v. City of Neosho*, supra; the maintenance of a public market, *Woodmansee v. Kansas City*, supra; and the payment for water as it is delivered, *City of Lebanon v. Schneider*, 349 Mo. 712, 163 S.W.2d 588 (banc 1942). Upon that basis a lease for one year with 24 successive options for annual renewal

has been held valid. *St. Charles City–County Library Dist. v. St. Charles Library Building Corp.*, 627 S.W.2d 64 (Mo. App.1981). Also see *Hellman v. St. Louis County*, 302 S.W.2d 911 (Mo.1957). In determining the obligation of a city to pay pensions does not violate § 26(a), the court observed: "We do not believe these provisions are involved here, for the reason there is no evidence that the money to be paid under the retirement plan would increase the debt over the revenues of any one year." *Kansas City v. Brouse*, 468 S.W.2d 15, 18 (Mo. banc 1971).

More to the point, the doctrine has consistently been held applicable to contracts for personal services:

> It is clear to our minds that such contract is wholly executory, and that the pecuniary liability of the defendant school district thereunder is contingent upon the rendition of such personal services by plaintiff.... [T]he mere execution of the contract of employment did not create a *debt* of the defendant school district ... within the meaning or intent of section 12, art. 10, of the Constitution, and that the defendant school district did not become *indebted* to plaintiff, under the terms of the contract of employment, until the time for the performance of such contract had expired.
>
> ....
>
> [T]he rule as announced by this court in the *Saleno* and kindred cases follows the weight of juristic authority, which is to the effect that executory and contingent contracts which are to be performed in futuro do not constitute an indebtedness against the municipal or quasi municipal corporation, in the sense of the constitutional inhibition, until such contracts have been performed.

*Tate v. School Dist. No. 11 of Gentry County*, 324 Mo. 477, 23 S.W.2d 1013, 1023–1024 (1929) (emphasis in original). Also see *Barry v. Blue Springs R–IV School Dist.*, 557 F.Supp. 249 (W.D.Mo. 1983); *Nibeck v. Wellston School District*, 524 S.W.2d 872 (Mo.1975); *Pullum v. Consolidated School Dist. No. 5*, 357 Mo. 858, 211 S.W.2d 30 (1948); *State ex rel. Barnett School District No. 66 v. Barton*, 104 S.W. 2d 284 (Mo.App.1937). But see *Anton, Raleigh & Wynne v. Wellston Fire Protection District*, supra.

The burden was upon the appellants to establish the indebtedness of the Hospital or County created by the employment contract was contrary to § 26(a). *State ex rel. State Highway Commission v. City of St. Louis*, 575 S.W.2d 712, 726 (Mo.App.1978).

> The Missouri Supreme Court has held that although the 'situation at the time a debt is contracted or created determines' whether it is void under the Constitutional prohibition, *Pullum v. Consolidated School Dist. No. 5*, 211 S.W.2d 30, 34 (Mo.1948).... [T]he defendant had to consider the constitutional prohibition at the time it became obligated to plaintiff by the performance of her contract.

*Barry v. Blue Springs R–IV School Dist.*, supra, at 254. It is not necessary to consider in detail the applicability of this principle. As stated, the appellants offered no evidence of the financial condition of the Hospital or Ripley County at anytime. For these reasons, the determination of the trial court the employment contract was not invalid is the proper result and is to be sustained. *Stitt v. Stitt*, 617 S.W.2d 645 (Mo.App.1981). The judgment is affirmed.

PREWITT, P.J., and FLANIGAN, J., concur.

HOGAN, J., not participating.